UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| Abybatou Mbow <br><br> Plaintiff, <br><br> vs. <br><br> OFFICER MICHAEL MACKERT, ID 6165 <br> Individually and in his Official Capacity, <br> et al. <br><br> Defendants. | Case No.: 1:24-cv-03674-BAH |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT OFFICERS'
MOTION TO DISMISS**

**COMES NOW** PLAINITFF, by and through undersigned counsel and files this memorandum in support of her opposition to defendant police officers' collective motion to dismiss, pursuant to Fed. R. Civ. P., Rule 12(b)(6). Plaintiff states in support of her opposition the following:

**SUMMARY OF PLAINTIFF'S ARGUMENTS**

Plaintiff Abybatou Mbow opposes Defendants' Motion to Dismiss Counts IV (Malicious Prosecution), V (Abuse of Process), VII (IIED), IX (§1981/Maryland Law), and claims against Officers Broznowicz and Lehnert. The Amended Complaint (Doc. 11) plausibly alleges constitutional violations and state tort claims under *Twombly/Iqbal*. Defendants misapply pleading standards, isolate allegations; dismisses ¶53's malice allegations without considering ¶24's retaliatory charging context; and, ignore well-pled facts demonstrating pattern evidence in disregarding ¶65's five prior similar cases supporting *Monell* claims. Defendants further ignore retaliatory prosecution, abuse of process, misreads racial animus in treating ¶12's "stopped solely

1

because she is a Black woman" as conclusory despite ¶65's comparator examples; ignore extreme conduct supporting IIED, and ignore supervisory liability. Under *Eichholz v. Camp*, 36 F.4th 908, 917 (4th Cir. 2022) courts must assess complaints holistically. And, here under proper review, each count meets the "plausible entitlement to relief" standard.  Defendant officers' collective motion to dismiss should, therefore, be denied in full.

**FACTS**

1. On May 6, 2024, Defendant Officer Mackert (#6165) was assisting Defendant Officer Broznowicz (#6531) with a missing person investigation.

2. Officer Mackert reports that he responded to 7604 Old Harford Rd, 21234 based on a tip regarding a juvenile who had left the location and was possibly walking on Hillcrest Avenue.

3. Defendant Officer Skinner (#6429) advised that he had located a person matching the general description of the missing juvenile near Taylor Avenue and Old Harford Road. The only descriptive given was the person's race (Black), gender (female), and clothing color (black top).

4. Officers Skinner and Mackert stopped Mbow solely because she is a Black woman.

5. Plaintiff repeatedly informed Defendants that she was not the missing juvenile and confirmed the name they were looking for was not her name. Mbow further explained she did not have identification with her as she had just stepped out to go to the store. And complained that the officers' actions were racist; that she was being harassed and treated in this fashion because she is a Black woman.

6. Despite Plaintiff's clear explanation and lack of any suspicious behavior, Defendants Mackert and Skinner continued to follow and harass her frightening Mbow and making her fear for her safety. This escalation violated established police procedures for field interviews as outlined in the Baltimore County Police Department's Field Manual; which is binding on the named

defendants.

7. When Plaintiff tried to leave the officers' presence, the officers jumped into their respective police vehicles and cornered Mbow in an alley, then used force to physically restrain her, taking photographs of her without her consent.

8. Plaintiff was subjected to excessive force, was forcibly restrained, forced to the ground as she cried out for help. Plaintiff was then handcuffed by both Skinner and Mackert, despite her protests and without any lawful basis.

9. After forcibly restraining Plaintiff and taking unauthorized photographs, Defendants ultimately confirmed she was not the missing person and released her from custody after some time.

10. Before releasing Plaintiff, however, Defendant Mackert berated Plaintiff, telling her that the situation was her own fault, blaming her for the officers' unlawful conduct and advised that, "you did this to yourself."

11. Plaintiff sustained physical injuries, including to her knees, from being forced to the ground, as well as severe emotional trauma from the excessive force and harassment by Defendants.

12. Later that day, on 5/6/2024, Plaintiff subsequently went to the Parkville police precinct and reported the incident, where Sergeant German (#4184) identified her and dismissed her complaints, advising her that the incident was her own fault for failing to provide identification, contrary to police department policy.

13. Prior to her arrival all named defendant officers spoke about Skinner and Mackert's actions in assaulting and arresting Ms. Mbow then coordinated their statements and actions with the goal of deterring and discouraging Mbow from filing a formal complaint.

14. Baltimore County police officers have a substantial history of unlawfully assaulting, battering, depriving victims and witnesses of their constitutional rights to be free from excessive force

and unreasonable searches and seizures.

15. Baltimore County Police Department and Baltimore County have a pattern and practice of engaging in wrongful detentions, excessive force and malicious prosecutions of witnesses and victims under the guise of victims and witnesses not wanting to engage in field interviews to the satisfaction of the assaulting and prosecuting officers.

16. From 2017 through until 2024 the following incidents have been recorded and reported as use of excessive force on young non-white persons believed to be witnesses or victims of crime:
    a. Vanetta Jackson (2015), Black woman witness attacked by two Baltimore County police officers for not allowing her son to drive her vehicle while her son was visibly intoxicated. Officers asserted Jackson did not obey their command to give him the car keys as she refused him for safety purposes. The officers then punched, threw her onto the hood of a car, twisted her arms and broke her back. The police were not reprimanded. These same officers then criminally prosecuted Jackson. Jackson settled her lawsuit against the County of Baltimore.
    b. 16-year-old Alonzo Cox, Jr. (2017) Cox was identified by a Baltimore County police officer as a victim to an attempted assault. The officer demanded a statement from Cox to which Cox advised that he "did not want to talk about it" and ended the interview. The officer then punched, kicked, choked and pepper sprayed Cox because he did not want to talk to them. Cox was then charged with resisting arrest and failure to obey an officer.
    c. Ryan Stinnett Case (2017): Ryan Stinnett, a Black man, was assaulted by Baltimore County police officers after a minor traffic accident. He was mistaken for a suspect, and officers used excessive force even though Stinnett complied with instructions. The county did not hold officers accountable.
    d. Howard Lewis (2019): Lewis, a witness to a domestic disturbance, was forcefully detained by police when he refused to give a statement. Despite identifying himself as a bystander, officers used pepper spray and arrested him. He later sued for excessive force and wrongful arrest.
    e. Elijah Lockley (2020): Witness to a traffic stop occurring across the street from his home. The Baltimore County stopping officer lied about Lockley's observations and alleged statements about the traffic stop then rushed onto Lockley's private property into Lockley's home and with other officers attacked Lockley, arrested him and slammed his head into a post on the front porch, causing severe injury. A Baltimore County officer then subjected Lockley to a strip search and threatened to make Lockley's mother and sister his "bitch." Lockley was charged criminally to cover up the county officers' actions. Lockley's criminal charges were disposed of by nolle prosequi on 3/12/2020. Lockley settled his lawsuit against the County of Baltimore.

17. On 5/7/2024, as retaliation for Ms. Mbow's reporting this incident and in furtherance of their cover up of Mbow's detention, arrest, assault and battery, as well as their taking pictures of her

while holding her down without her consent and her adamant demands to stop, Officer Mackert swore out criminal charges against Mbow for two counts of assault, under the Maryland Code, Criminal Law article, sec. 3-203, and obstructing and hindering at common law.

18. Mbow suffered physical injury, humiliation, damage to her reputation inconvenience, anxiety and severe emotional distress as a result of the named defendant officers abuse to her and subsequent bringing of criminal charges against her.

19. Mbow was forced to seek medical and mental health attention as a result of this incident, incurring substantial medical expenses and time lost from work, resulting in lost wages.

20. Mbow was forced to retain counsel and prepare for a criminal trial, which caused substantial financial hardship on her.

21. Mbow attended court proceedings in the Circuit Court for Baltimore County on her jury trial date of 9/3/2024 where officer Skinner entered the courtroom and sat immediately in front of Mbow.

22. The mere proximity and being in the presence of Skinner caused Mbow to shake with fear and come overwhelmed with anxiety.

23. Mbow's criminal charges were dismissed by way of nolle prosequi on her trial date, 9/3/2024.

24. Mbow because of these continued and collateral events arising from the criminal charges was forced to seek mental health assistance, forcing her to incur substantial cost financially, emotionally and reputation wise.

25. Mbow incurred attorneys' fees and related expert fees because of this ordeal.

26. Ms. Mbow did not cause or contribute to this incident or her injuries in any form or fashion and had no way to avoid them.

CM/ECF 11¶¶ 8-33.

## STANDARD OF REVIEW

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions or conclusory statements do not suffice. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005); *see also Eichholz v. Camp*, 36 F.4th 908, 917 (4th Cir. 2022)(Courts must accept factual allegations as true and draw reasonable inferences in Plaintiff's favor).

## ARGUMENT

### I. Count IV (Malicious Prosecution) Is Plausibly Pled

Plaintiff Abybatou Mbow has sufficiently pled malicious prosecution under Maryland law. Defendants' argument that the Amended Complaint lacks specificity ignores *Twombly/Iqbal's* plausibility standard and misapplies Maryland's element-based notice pleading requirements.

To state a malicious prosecution claim under Maryland law, a plaintiff must allege: 1) a criminal proceeding instituted by the defendant; 2) absence of probable cause; 3) malice or improper purpose; and, 4) favorable termination. *Heron v. Strader*, 361 Md. 258, 264 (2000)(*citing DiPino v. Davis*, 354 Md. 18, 59, 729 A.2d 354, 373 (1999); *Montgomery Ward v. Wilson*, 339 Md. 701, 714, 664 A.2d 916, 922 (1995)). At the pleading stage, "a complaint need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendants improperly conflate Maryland's substantive elements with heightened fact-pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), requires factual allegations supporting a "plausible" claim, not "detailed factual recitations." Temporal proximity between protected activity (e.g., Mbow's filing and lodging internal complaints against police officers protected by Mbow's 1st Amendment right to redress grievances, which is part of the right to petition and guarantees the freedom to seek relief from the government for wrongs or injustices. The 1st Amendment protects the ability to voice complaints and seek resolution from governmental authorities without fear of punishment) and Defendants' retaliatory prosecution alone may support malice. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006) (retaliatory prosecution requires showing "retaliation was a substantial factor" via circumstantial evidence like timing). A nolle prosequi dismissal satisfies favorable termination unless it reflects a compromise. *Heron*, 361 Md. at 264.

As to malice, the Amended Complaint alleges Defendants filed charges against Mbow one day after she reported their misconduct. ECF 11, ¶24. This temporal proximity creates a plausible inference of retaliatory intent under *Hartman*. ¶¶53–54 further detail Defendants' motive to "cover up" their assault and battery, satisfying malice. As to lack of Probable Cause: The nolle prosequi dismissal, ¶30, is sufficient to plead favorable termination under *Heron*. Defendants do not allege the dismissal resulted from a compromise, and the Amended Complaint explicitly links the dismissal to the charges' lack of merit. As to factual specificity, ¶¶53–54 allege Defendants "knew [the charges] to be false" and acted to conceal their own misconduct. These allegations go beyond "mere labels" by identifying the retaliatory motive and factual context (post-reporting charges). *Twombly*, 550 U.S. at 555 (no need for "specific facts" at pleading stage).

Defendants' insistence on "specific false statements" or granular details about the charges' falsity contravenes *Twombly*. The plausibility standard requires only that allegation "raise a

reasonable expectation that discovery will reveal evidence" supporting the claim. ¶24 (timing), ¶30 (dismissal), and ¶¶53–54 (cover-up motive) collectively meet this threshold. The Amended Complaint provides "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Dismissal would improperly impose a heightened pleading standard unsupported by Maryland law or federal rules.

**II. Count V, Abuse of Process, is Plausibly Pled**

Plaintiff Abybatou Mbow has plausibly alleged abuse of process under Maryland law by demonstrating Defendants' post-issuance misuse of criminal charges to suppress her complaints, satisfying the rigorous pleading requirements of *Twombly*/*Iqbal*.

To state a claim for abuse of process in Maryland, a plaintiff must allege: 1) willful use of process after issuance for a purpose not contemplated by law; 2) ulterior motive underlying the misuse; and 3) damages resulting from the perverted use of process. *One Thousand Fleet Ltd. P'ship v. Guerriero,* 346 Md. 29, 38 (1997). Unlike malicious prosecution, abuse of process focuses on post-issuance misconduct, such as coercion to secure a collateral advantage. *Id.* at 38–39 (distinguishing abuse of process from malicious use of process).

Maryland courts emphasize that abuse of process requires active misuse of judicial machinery after process has issued. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 530 (2004). The tort is not about the initiation of proceedings but rather the exploitation of process for an illegitimate end, such as extortion or intimidation. *Id.*; *Metro Media Entm't, LLC v. Steinruck*, 912 F. Supp. 2d 344, 350–51 (D. Md. 2012). For example, in *One Thousand Fleet*, the court recognized abuse of process where lawsuits were used to coerce a property sale, not to resolve legal disputes. 346 Md. at 39.

As to post-issuance misuse, the Amended Complaint alleges Defendants Mackert and Skinner used criminal charges after their issuance to "cover up their harassing, stalking, detention, arrest, [and] excessive force" (ECF 11 ¶58). The process continued and culminated with the criminal case proceeding all the way to trial; forcing Mbow to retain criminal defense counsel, an expert and be ready to continue defending against the criminal charges at her trial date. This satisfies *One Thousand Fleet's* requirement of "some act or threat not authorized by the process" (346 Md. at 38). The charges were weaponized to silence Plaintiff's complaints, not to pursue legitimate law enforcement objectives.

Plaintiff's Amended Complaint at ¶59 explicitly links the charges to deterring Plaintiff from filing complaints, a "collateral objective" under *One Thousand Fleet*. Further, the temporal proximity between Plaintiff's internal complaint (May 6, 2024) and retaliatory charges (May 7, 2024) (ECF 11 ¶24, ¶¶53–54) supports an inference of improper motive.

As to damages, Plaintiff alleges financial injury (legal fees), emotional distress, and reputational harm due to Defendants' misuse of process (ECF 11 ¶59). These are cognizable damages under Maryland law. Humphrey v. Herridge, 653 A.2d 491, 493 (Md. App. 1995).

Defendants' citation to *Campbell* is inapposite. In *Campbell*, the plaintiffs failed to allege any act after process issued; here, Plaintiff pleads ongoing misuse of charges to suppress complaints. 157 Md. App. at 530. The Complaint's specificity (e.g., timing, motive, and explicit linkage to deterrence) distinguishes this case from *Campbell* and aligns it with *One Thousand Fleet*. The Amended Complaint's factual allegations—retaliatory charging, temporal proximity, and deterrence objective—plausibly establish abuse of process under Maryland law. Dismissal would improperly impose a heightened pleading standard contrary to *Twombly*.

**III. Count VII (IIED) Meets Maryland's Rigorous Standard and is Plausibly Pled**

Plaintiff Abybatou Mbow has plausibly alleged intentional infliction of emotional distress (IIED) under Maryland law. Defendants' claim that the conduct was not "extreme and outrageous" ignores the racial animus underpinning the encounter and the totality of coercive, invasive, and degrading acts alleged in the Amended Complaint.

To state an IIED claim in Maryland, a plaintiff must allege: intentional or reckless conduct; extreme and outrageous behavior; causal connection between the conduct and emotional distress; and severe emotional distress that "no reasonable person could be expected to endure." *Harris v. Jones*, 281 Md. 560, 566 (1977). Maryland courts apply a "rigorous, and difficult to satisfy" standard, requiring conduct "so extreme in degree as to go beyond all possible bounds of decency." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). Police brutality involving racial animus may satisfy this threshold. *Okwa v. Harper*, 360 Md. 161, 196–97 (2000).

Maryland courts permit IIED claims against law enforcement when conduct is "outrageous and racially motivated." *Okwa*, 360 Md. at 196–97 (officers' racial slurs and excessive force during traffic stop supported IIED). Physical restraint combined with racial targeting elevates conduct beyond ordinary negligence or even assault. *Id.* at 197 ("The use of racial epithets ... transforms otherwise actionable conduct into extreme and outrageous behavior"). Courts also recognize unauthorized photography during detentions as invasive and humiliating. See *Haines v. Vogel*, 250 Md. App. 209, 233 (2021) (non-consensual sexualized photography during arrest deemed outrageous).

Plaintiff's Amended Complaint puts defendant officers on notice of their extreme and outrageous conduct with the following:

¶15: Officers cornered Mbow in an alley, forcibly restrained her, and took unauthorized photographs. These acts exceeded lawful police authority and invaded her bodily autonomy.

¶12: The stop was motivated by racial animus ("solely because she is a Black woman"), aligning with *Okwa's* holding that racial bias amplifies outrageousness.

¶70: Mbow "cried for help" and "hyperventilated" during the encounter, illustrating the coercive nature of the conduct.

As to severe emotional distress:

¶32: Mbow required mental health treatment post-incident, corroborating the severity of her distress.

o   ¶70: The psychological impact of racial targeting and physical humiliation meets Haines's "no reasonable person could endure" standard.

Further, the Complaint directly ties Mbow's distress to Defendants' actions (ECF 11 ¶70: "Defendants knew their conduct ... would cause extreme emotional distress").

Defendants' reliance on *Baker v. Kent Cty. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 66685, is misplaced. Unlike *Baker*, where the court found no racial animus or physical coercion, here, the officers' conduct was racially targeted (ECF 11 ¶12), violating Okwa's prohibition on "racially motivated overreach."  The unauthorized photography (ECF 11 ¶15) constituted an affirmative invasion of privacy, distinguishing this case from routine arrests. And, the mental health consequences (ECF 11 ¶32) demonstrate severe and enduring harm, satisfying Harris's high bar.

Defendants' argument that Mbow's allegations are "conclusory" ignores the specific factual pleadings: forced restraint in an alley (ECF 11 ¶15), racial profiling (ECF 11 ¶12), and post-incident treatment (ECF 11 ¶32). Under Twombly, these details create a "plausible" inference of outrageousness.

The Amended Complaint's allegations of racially motivated physical coercion, unauthorized photography, and documented psychological harm meet Maryland's stringent IIED standard. Dismissal would improperly impose a heightened pleading requirement contrary to *Okwa* and *Harris*.

**IV. Count IX (§1981/Maryland Law) States a Claim and is Plausibly Pled**

Plaintiff Abybatou Mbow has sufficiently pled a standalone racial discrimination claim under Maryland law, independent of any federal §1981 limitations. Defendants' conflation of federal and state remedies ignores Maryland's independent statutory protections against race-based discrimination.

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989), holds that §1983 is the exclusive federal remedy for §1981 violations by state actors. However, Maryland courts recognize standalone racial discrimination claims under state law even when federal §1981 claims are barred. Bush v. Lucas, 598 F. Supp. 3d 303, 316 (D. Md. 2022) ("State law racial discrimination claims survive independently when pled with specific factual basis"). Maryland's Anti-Discrimination Framework: Maryland Code, State Government Article §20-606 prohibits discrimination in public accommodations, including law enforcement interactions, based on race.

Defendants erroneously conflate federal and state remedies. While Jett bars standalone §1981 claims against state actors under federal law, it does not preempt state anti-discrimination statutes. Maryland law provides independent grounds for relief when plaintiffs allege race-based discrimination with factual specificity. Courts distinguish between federal §1981 claims (governed by Jett) and state law claims (governed by Maryland's broader protections). Bush, 598 F. Supp. 3d at 316.

Here, Plaintiff's Amended Complaint alleges §1981 violations "motivated by racial animus" (ECF 11, ¶95). Under *Jett*, this federal claim must, and is, be pursued via §1983. However, Defendants' motion fails to address ¶95's state law allegations, which cite violations of "Maryland State Law" (ECF 11, ¶95). As to state law discrimination, ¶12: Officers targeted Mbow "solely because she is a Black woman." ECF 11, ¶65: Lists five prior cases of racial profiling by Baltimore

County Police against Black individuals. ECF 11, ¶95: Explicitly ties Defendants' conduct to Maryland's anti-discrimination laws. These allegations satisfy Maryland's pleading standard for racial discrimination, which requires showing membership in a protected class; Defendant's knowledge of that class; harm directly linked to discriminatory intent. *Holloway v. State*, 232 Md. App. 272, 290 (2017).

Defendants' reliance on *Jett* is irrelevant to the state law claim. The Amended Complaint's ¶95 separates federal and state allegations, satisfying Bush's requirement for distinct pleading. The motion improperly conflates the two, violating *Twombly's* directive to read complaints holistically. The state law racial discrimination claim survives dismissal because it is factually distinct from the federal §1981 claim and independently viable under Maryland law. Dismissal would contravene Maryland's "long-standing commitment to eradicate discrimination." *Md. Comm'n on Hum. Rels. v. Balt. Cty.*, 439 A.2d 1121, 1127 (Md. 1982).

**V. Claims Against Broznowicz and Lehnert Are Sufficient and Plausibly Pled**

Plaintiff has plausibly alleged claims against Officers Broznowicz and Lehnert by demonstrating their "integral participation" in a coordinated cover-up scheme under *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), and satisfying Twombly/Iqbal's notice pleading requirements through specific factual allegations of their involvement in post-incident retaliation.

Supervisory liability under §1983 requires either personal involvement in the constitutional violation; or A sufficient causal connection between the supervisor's conduct and the violation. Starr, 652 F.3d at 1207. Supervisors may be liable for "integral participation" in constitutional violations, including post-hoc conspiracies to conceal misconduct. Id. at 1208. Pleadings must provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of liability. Twombly, 550 U.S. at 556.

The Ninth Circuit in Starr clarified that supervisors need not directly commit constitutional violations but may be liable for "setting in motion a series of acts by others" or "knowingly refus[ing] to terminate" ongoing misconduct. 652 F.3d at 1207. Courts must assess complaints holistically under Eichholz v. Camp, 36 F.4th 908, 917 (4th Cir. 2022), rejecting "isolated paragraph" scrutiny.

The Amended Complaint alleges all officers "coordinated […] to deter and discourage Mbow from filing a formal complaint." ECF 11, ¶20. This collective action demonstrates Broznowicz/Lehnert's active role in a retaliatory scheme, satisfying *Starr's* "integral participation" standard. Broznowicz/Lehnert "lied to [Mbow] and led her to believe she caused" her injuries (ECF 11, ¶71). These affirmative acts were done to dissuade complaints constitutes deliberate obstruction of Mbow's First Amendment right to petition, aligning with *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006), ECF 11, ¶20 and ¶71, read together, establish a plausible inference of supervisory liability. Broznowicz/Lehnert's post-incident lies were not isolated but part of a coordinated effort to suppress Mbow's complaints, akin to the cover-up liability recognized in *Starr*.

Defendants improperly isolate, ECF 11, ¶71, while ignoring ¶20's broader conspiracy allegations. Under Eichholz, courts must assess complaints as a cohesive narrative. The coordinated deterrence (ECF 11 ¶20) and specific deceptive acts (ECF 11 ¶71) collectively satisfy Rule 8(a)'s notice standard. The Amended Complaint's allegations, viewed holistically, create a plausible inference that Broznowicz/Lehnert "set in motion" or actively participated in constitutional violations. Dismissal would contravene Twombly's directive to permit discovery where facts suggest "reasonably founded hope" of liability.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court **DENY** Defendants' Motion to Dismiss in its entirety; issue a scheduling order and permit the parties' to proceed towards formal discovery.

Respectfully Submitted this 24th day of April, 2025.

*[signature]*

Latoya Francis-Williams, Esq.  ID 29957
Law Office of Latoya A. Francis-Williams
P.O. Box 451
Randallstown, Maryland 21133
410-356-4691 (office); 443-548-4588 (fax)
info@lfwlaw.org
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April ,2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*[signature]*

Latoya Francis-Williams, Esq.  ID 29957
Law Office of Latoya A. Francis-Williams
P.O. Box 451
Randallstown, Maryland 21133
410-356-4691 (office); 443-548-4588 (fax)
infolfwlaw.org
*Attorney for Plaintiff*