## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ABYBATOU MBOW,

     Plaintiff,

v.

OFFICER MICHAEL MACKERT ET AL.,

     Defendants.

Civil No. 24-3674-BAH

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Abybatou Mbow ("Plaintiff") filed an amended complaint against Officer Michael Mackert ("Mackert"), Officer Vincent G. Skinner ("Skinner"), Officer Thomas Broznowicz ("Broznowicz"), Corporal David A. Lehnert ("Lehnert") (together, the "County Officers"), and Baltimore County, Maryland ("Baltimore County") (collectively, "Defendants"), alleging numerous claims in connection with an alleged stop and detention of Plaintiff conducted by Mackert and Skinner in May of 2024. *See* ECF 11 (amended complaint). Pending are Baltimore County's motion to vacate the entry of an order of default, ECF 22, and the County Officers' motion to dismiss, ECF 25. Plaintiff filed responses to both motions, ECF 24 (response to motion to vacate) and ECF 26 (response to motion to dismiss), and the County Officers filed a reply, ECF 27. The motion to dismiss, ECF 25, and Plaintiff's response, ECF 26, include memoranda of law, and the motion to vacate includes exhibits.[1] *See* ECFs 22-1–22-4. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Baltimore County's motion to vacate is **GRANTED**,

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

and the County Officers' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Further, Plaintiff's counsel is **ORDERED** to address accusations that she provided what appear to be fake or inaccurate case citations.

## I.   BACKGROUND

### A.   Procedural Background

On December 19, 2024, Plaintiff filed suit against "Officer Ryan Mackert," "Officer Vernon Skinner," "Officer Kyle Broznowicz," "Corporal Adam Lehnert," and Baltimore County. ECF 1. The summons for Baltimore County along with the initial complaint was served via private process server on January 3, 2025. ECF 7. On January 25, 2025, Plaintiff filed a motion for leave to file an amended complaint in order to correct the names of the County Officers and provide their badge numbers, *see* ECF 8, which the Court granted, ECF 10, at 1. The amended complaint was docketed on February 12, 2025, *see* ECF 11, and corrected summonses issued for the County Officers only, *see* ECF 12. The County Officers waived service on March 24, 2025. *See* ECFs 17–20. The County Officers then filed a motion to dismiss. ECF 25. Plaintiff filed a response, ECF 26, and the County Officers filed a reply, ECF 27.

Baltimore County's response to the initial complaint was due on January 23, 2025, see ECF 7, at 2, but it did not file a timely answer. On February 20, 2025, approximately one week after her amended complaint was docketed, Plaintiff filed a motion for entry of default against Baltimore County, ECF 13, which the Clerk of Court entered on March 13, 2025, *see* ECF 15. On April 14, 2025, Baltimore County filed a motion to vacate the entry of default, ECF 22, which Plaintiff opposes, ECF 24.

### B.   Factual Background

Plaintiff alleges in her amended complaint that on May 6, 2024, she was unlawfully stopped by Skinner and Mackert, ECF 11, at 5 ¶ 11, while the two officers were assisting

Broznowicz "with a missing person investigation" regarding a missing juvenile, *id.* at 4 ¶ 8. The "only descript[ion]" Skinner and Mackert had of the missing juvenile was "Black," "female," and wearing a "black top." *Id.* at 5 ¶ 10. Following up on a tip, Mackert "responded to 7604 Old Harford Rd" to investigate a juvenile who "was possibly walking on Hillcrest Avenue." *Id.* ¶ 9. Skinner then "advised he had located a person matching the general description of the missing juvenile" and stopped Plaintiff. *Id.* ¶ 10. Plaintiff alleges the stop occurred "solely because she is a black woman." *Id.* ¶ 11. Plaintiff "repeatedly informed" Skinner and Mackert "that she was not the missing juvenile and confirmed the name they were looking for was not her name." *Id.* ¶ 12. Plaintiff "further explained that she did not have identification with her" because "she had just stepped out to go to the store." *Id.* She also alleges that she "complained that the officers' actions were racist." *Id.*

Despite Plaintiff's "clear explanation and lack of any suspicious behavior," she alleges that Mackert and Skinner "continued to follow and harass her[,] frightening [her] and making her fear for her safety." *Id.* ¶ 13. For example, when Plaintiff "tried to leave the officers' presence," Mackert and Skinner "jumped into their respective police vehicles and cornered [Plaintiff] in an alley," and "then used force to physically restrain her" and "tak[e] photographs of her without her consent." *Id.* ¶ 14. She alleges that she was "forced to the ground as she cried out for help" and "handcuffed by both Skinner and Mackert, despite her protests." *Id.* ¶ 15. Mackert "berated Plaintiff, telling her that the situation was her own fault," allegedly stating, "you did this to yourself." *Id.* at 6 ¶ 17. Plaintiff alleges that the episode caused her to "sustain[] physical injuries, including to her knees, from being forced to the ground" and alleges that she also suffered "severe emotional trauma[.]" *Id.* ¶ 18. Mackert and Skinner "ultimately confirmed [Plaintiff] was not the missing person and released her from custody after some time." *Id.* ¶ 16.

Later that same day, Plaintiff "went to the Parkville police precinct and reported the incident." *Id.* ¶ 19. She claims that "Sergeant German . . . dismissed her complaints, advising her that the incident was her own fault for failing to provide identification[.]" *Id.* Plaintiff further alleges that the County Officers "coordinated their statements" about the stop, "with the goal of deterring and discouraging [Plaintiff] from filing a formal complaint." *Id.* ¶ 20. Also, "as retaliation for [Plaintiff] reporting this incident and in furtherance of their cover up," Plaintiff alleges that "Mackert swore out criminal charges against [Plaintiff] for two counts of assault . . . and obstructing and hindering at common law." *Id.* at 7 ¶ 24.

On September 3, 2024, Plaintiff appeared for jury trial on her state criminal charges. *Id.* at 8 ¶ 28. She alleges that after "Skinner entered the courtroom and sat immediately in front of [Plaintiff]," Plaintiff began to "shake with fear and [be]come overwhelmed with anxiety." *Id.* ¶¶ 28–29. Plaintiff's criminal charges were dismissed. *Id.* ¶ 30.

Plaintiff claims she has suffered "physical injury, humiliation, damage to her reputation[,] inconvenience, anxiety and severe emotional distress" and has been "forced to seek medical and mental health attention as a result of this incident, incurring substantial medical expenses and time lost from work, resulting in lost wages." *Id.* at 7–8, ¶¶ 25–26. She alleges she has also been harmed "reputation wise." *Id.* at 8 ¶ 31. Further, Plaintiff claims she was "forced to retain counsel and prepare for a criminal trial, which caused substantial financial hardship," *id.* ¶ 27, including "attorneys' fees and related expert fees," *id.* ¶ 32.

Plaintiff brings thirteen claims related to this incident. Against Mackert and Skinner only, Plaintiff brings claims of assault (Count I); battery (Count II); false arrest/false imprisonment (Count III); malicious prosecution (Count IV); abuse of process (Count V); and violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count VI). *Id.* at 8–15. Against all four

County Officers, Plaintiff brings a claim of intentional infliction of emotional distress ("IIED") (Count VII). *Id.* at 15–17. Against Mackert, Skinner, Broznowicz, and Baltimore County, Plaintiff brings a claim under 42 U.S.C. § 1983 for unlawful seizure, excessive force, and false arrest in violation of the Fourth Amendment (Count VIII) and a racial discrimination claim under 42 U.S.C. § 1981 and related Maryland state law (Count IX). *Id.* at 17–21. Against Baltimore County only, Plaintiff brings a *Monell* claim for failure to train, supervise, and discipline pursuant to 42 U.S.C. § 1983 (Count X); and claims alleging negligent hiring, retention, and supervision (Count XI); failure to investigate police misconduct (Count XII); and negligent failure to investigate police misconduct (Count XIII). *Id.* at 21–28. The Court now turns to the pending motions, which are ripe for review.

## II.   BALTIMORE COUNTY'S MOTION TO VACATE

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Under Rule 55(c), the court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The United States Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020) ("[T]he law disfavors disposition by default and accords preference to resolving a case on its merits.").

Baltimore County was properly served with the initial complaint, *see* ECF 7 (summons returned executed on Baltimore County on January 2, 2025); ECF 22, at 1 n.1 (confirming that Baltimore County "was served via private process server on January 2, 2025"). It failed to file a responsive pleading by January 23, 2025, which ordinarily would warrant the entry of default. *See*

5

*Hodges v. Washington Metro. Area Transit Auth.*, Civ. No. CBD-14-0891, 2014 WL 5797754, at
*1 (D. Md. Nov. 5, 2014) ("Entry of default . . . may only be entered after a defendant has been
properly served." (citing *Maryland State Firemen's Ass'n v. Chavez*, 166 F.R.D. 353, 354 (D. Md.
1996))). However, after receiving leave of the Court, ECF 10, Plaintiff subsequently filed an
amended complaint on February 12, 2024 against the County Officers and Baltimore County, *see*
ECF 11.

As a threshold matter, Plaintiff seeks default based on Baltimore County's failure to
respond to Plaintiff's *initial* complaint, *see* ECF 13, despite the fact that Plaintiff subsequently
filed an *amended* complaint. The filing of "an amended pleading ordinarily supersedes the original
and renders it of no legal effect." *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001).
"Consistent with this principle, district courts in other circuits routinely have vacated or set aside
'as moot' a defendant's default on a prior, superseded complaint once the plaintiff's amended
complaint is the operative pleading in the case—even if the plaintiff simply repleaded her claims
against that defendant." *Anselme v. Griffin*, No. 3:20CV00005, 2021 WL 2152512, at *3 (W.D.
Va. May 26, 2021) (collecting cases); *see also Rice v. M-E-C Co.*, No. CV 2:17-1274-BHH, 2022
WL 20138734, at *2 (D.S.C. Mar. 29, 2022) ("Likewise, this Court now finds moot the Clerk's
earlier entries of default against Reuben and M-E-C, as they were based on Plaintiff's prior,
superseded complaint."); *Altes v. Pride Ctr. of Maryland, Inc.*, Civ. No. JKB-23-1033, 2024 WL
249156, at *1 (D. Md. Jan. 23, 2024) (vacating without objection by the plaintiff an Order of
Default when plaintiff filed an amended complaint). Consequently, the Court is justified in setting
aside the entry of default as moot based solely on the filing of the amended complaint. However,
since Baltimore County does not argue that the amended complaint moots the entry of default, the
Court will address its motion under Rule 55(c).

"The disposition of motions made under Rule [ ] 55(c) . . . is a matter which lies largely within the discretion of the trial judge." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (quoting *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)). In *Payne ex. rel. Est. of Calzada v. Brake*, the Fourth Circuit set forth six factors for district courts to consider when determining whether to set aside an entry of default: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Id.* at 204–05. "In weighing these factors, a district court should not 'place[ ] overarching emphasis on a single *Payne* factor.'" *Old Republic Nat'l Title Ins. v. Georg*, Civ. No. RDB-21-0842, 2023 WL 2185777, at *3 (D. Md. Feb. 23, 2023) (citing *Colleton Preparatory Acad.*, 616 F.3d at 419).

Though it offers a valid explanation for the failure to timely respond to the initial complaint, Baltimore County specifically addresses only one of the six *Payne* factors in its motion to vacate by asserting that it has several meritorious defenses to Plaintiff's claims including "qualified immunity, public official immunity, [and] governmental immunity." ECF 22, at 4. Plaintiff argues that Baltimore County must provide specific factual grounds to support its meritorious defenses. ECF 24, at 3 (noting that Baltimore County "offers no affidavits or corporate records to support its immunity defenses" and offers only "generic legal assertions without case-specific analysis").

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Stated differently, "[t]he question is not whether the defendant has fully proven a defense at this stage, but rather 'whether there is some possibility that the outcome after a full trial will be contrary to the result

7

achieved by the default.'" *Sec. & Exch. Comm'n v. Lee*, Civ. No. ABA-24-296, 2025 WL 2781530,

at *5 (D. Md. Sept. 30, 2025) (quoting *Nat'l Liab. & Fire Ins. Co. v. Rooding*, Civ. No. ELH-15-

2572, 2016 WL 5144493, at *6 (D. Md. Sept. 21, 2016)). However, a defaulting party must still

"make[ ] a factual showing that 'would permit a finding for the defaulting party.'" *Acosta v. Vera's*

*White Sands Beach Club, LLC*, Civ. No. PX-16-782, 2019 WL 1767147, at *2 (D. Md. Apr. 22,

2019) (quoting *Russell v. Krowne*, Civ. No. DKC-08-2468, 2013 WL 66620, at *2 (D. Md. Jan. 3,

2013)). "A movant's burden for proffering a meritorious defense is not onerous" as the moving

party must only "allege sufficient facts that, if true, would constitute a defense." *Id.*

Although Plaintiff takes issue with the lack of factual details in support of Baltimore

County's proffered defenses, the Court finds that these defenses—qualified immunity, public

official immunity, and governmental immunity—require little additional factual development in

order to show that, if raised, they might permit a finding in Baltimore County's favor. The contours

of these defenses are well-established and rest primarily on the fact that Baltimore County is a

governmental entity, a fact that is undisputed. Indeed, it is unclear what "affidavits or corporate

records" could be offered in support of Baltimore County's defenses. ECF 24, at 3. In short,

Baltimore County offers enough as it relates to its proposed defenses[2] to justify vacating default,

---

[2] Plaintiff's argument that Baltimore County's proposed defenses are too vague appears to rest
primarily on the assertion that the Fourth Circuit in *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124
(4th Cir. 2020), determined that the party seeking to vacate default in that case presented a
"jurisdictional defense [that] was 'factually detailed and legally substantiated.'" ECF 24, at 3. To
the extent the quotation used by Plaintiff implies that this language was lifted directly from the
*Fidrych* opinion, the Court notes that the language does not appear anywhere in *Fidrych*.
Moreover, the bulk of the discussion in *Fidrych* addresses whether default *judgment* was entered,
thus requiring excusable neglect to be set aside pursuant to Fed. R. Civ. P. 60(b), or whether the
lower court merely entered *default*, which requires mere "good cause" pursuant to Fed. R. Civ. P.
55(c) to be set aside. *Fidrych*, 952 F.3d at 130. The details of the proof offered by Marriott, the
defendant in that case, to overcome the entry of default went undiscussed and, whatever that proof
was, it was not endorsed by the appellate court as resoundingly as Plaintiff claims here. In fact, it
remains unclear what proof was offered by Marriott since the lower court opinion applying the

8

particularly in light of the Fourth Circuit's strong preference for deciding cases on the merits. *See Broadcast Music, Inc. v. Carrie Bell, Inc.*, Civ. No. JKB-19-1517, 2019 WL 6255173, at *4 (D. Md. Nov. 22, 2019) (accepting the movant's "relatively threadbare defense" that the defendant was "not 'personally liable' for any copyright infringement" as "possibl[y] meritorious" due to "the Fourth Circuit's admonishment to interpret Rule 55(c) motions liberally"). Thus, the first of the *Payne* factors weighs in Baltimore County's favor.

"[A] party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default." *Nat'l Liab. & Fire Ins.*, 2016 WL 5144493, at *7 (quoting *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001)). "Courts must consider the specific 'facts and circumstances of each occasion' when determining whether a defendant acted in a reasonably prompt manner when moving to set aside a default." *Propps v. Kirkpatrick*, Civ. No. SAG-21-1744, 2021 WL 4951930, at *2 (D. Md. Oct. 25, 2021) (quoting *Prescott v. MorGreen Solar Solutions, LLC*, 352 F. Supp. 3d 529, 537 (E.D.N.C. 2018)). Here, the Clerk entered default on March 13, 2025 and, in accordance with the local rules, established a 30-day deadline for Baltimore County to move to vacate. ECF 15; ECF 16; *see* Loc. R. 108.2 (D. Md. 2025) (setting the deadline to apply to vacate entry of default within thirty (30) days of service of the notice of default). Baltimore County filed its motion 32 days after the entry of default, only two days late. ECF 22. Although Baltimore County does not explain its delay, courts have vacated default in cases involving substantially longer delays than the minor delay present here. *See, e.g., Nat'l Liab. & Fire Ins. Co.*, 2016 WL 5144493, at *7 (five weeks); *Acosta*,

---

*Payne* factors observed without additional detail that "Marriott has offered sufficient proof of a meritorious defense to permit a finding in its favor on this factor." *Fidrych v. Marriott Int'l, Inc.*, No. 2:17-CV-2195-PMD, 2017 WL 5889204, at *2 (D.S.C. Nov. 29, 2017), *aff'd*, 952 F.3d 124 (4th Cir. 2020).

2019 WL 1767147, at *3 (two months).  Accordingly, the second *Payne* factor does not weigh
against vacating default.

The third and fifth *Payne* factors overlap and "can be addressed together." *Timilon Corp.
v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 682 (D. Md. 2024).  "In considering
personal responsibility, district courts in the Fourth Circuit have found that default judgment 'is
reserved only for cases where the party's noncompliance represents bad faith or complete disregard
for the mandates of procedure and the authority of the trial court.'" *Id.* (quoting *First Am. Fin.
Corp. v. Homefree USA, Inc.*, Civ. No. ELH-12-2888, 2013 WL 2902856, at *4 (D. Md. June 12,
2013).  As noted, Baltimore County was properly served with Plaintiff's initial complaint.  ECF
22, at 1.  Correspondence between the parties attached to the motion to vacate suggest that counsel
for Baltimore County may have been confused about whether the County had been formally
served, but there appears to be no dispute that Baltimore County had a copy of the complaint as
early as January of 2025.  *See* ECF 22-1 (January 24, 2025 email between counsel discussing the
complaint); ECF 22-3 (February 19, 2025 email between counsel discussing the same).
Regardless, despite the delay in responding, the record before the Court reflects that counsel were
in contact with one another soon after the filing of Plaintiff's lawsuit and had a genuine
disagreement over whether service was effectuated.  This correspondence does not reveal bad faith
or complete disregard of this Court's procedures on the part of Baltimore County.[3]  Further,
Plaintiff does not allege that Baltimore County has a history of dilatory actions in this, or any, case.
Therefore, the third and fifth *Payne* factors do not weigh in Plaintiff's favor.

---

[3] In fact, it appears that counsel for Baltimore County promptly informed Plaintiff's counsel that
the original complaint included allegations against individuals who did not work for Baltimore
County, ECF 22-1, at 2.  This email resulted in the filing of the amended complaint which correctly
named the officers allegedly involved in the incident.  *Compare* ECF 1, at 1, *with* ECF 11, at 1.

10

Plaintiff argues that vacating the default will cause prejudice to the Plaintiff because she "has already incurred substantial costs from the default process." ECF 24, at 9. Though these costs go without detail in Plaintiff's response, even if they were incurred and recoverable despite the subsequent filing of an amended complaint, "the Court may address this prejudice through a less drastic sanction than default—an award for attorney's fees and costs." *Atinus Works, LLC v. Greenclean, Inc.*, Civ. No. MJM-24-614, 2025 WL 487336, at *2 (D. Md. Feb. 13, 2025) (citing *Mullinex v. John Crane Inc.*, 636 F. Supp. 3d 622, 628 (E.D. Va. 2022)). Thus, all totaled, six *Payne* factors tip the balance in favor of vacating the entry of default, and the Court will order that relief.

The parties initially appeared to dispute whether Baltimore County 1) was required to respond to the initial complaint or the amended complaint and 2) was properly served with the amended complaint. *See* ECF 13, at 2; ECF 22, at 3 n.4. However, Baltimore County closes its motion by seeking an opportunity to respond to the amended complaint, thus putting to rest any issues related to service. ECF 22, at 5. The Court grants the request and Baltimore County's response to the amended complaint is due within 14 days.

## III.   THE COUNTY OFFICERS' MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial

11

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The County Officers move to dismiss the malicious prosecution (Count IV), abuse of process (Count V), IIED (Count VII), and racial discrimination (Count IX) claims against Skinner and Mackert. ECF 25-1, at 1–8. Broznowicz and Lehnert also seek dismissal of all claims against them.[4]  *Id.* at 8–10. The Court addresses the viability of each claim in turn.

### A.    Count IV: Malicious Prosecution Against Skinner and Mackert

Plaintiff alleges malicious prosecution against Mackert and Skinner, claiming they "started and continued a criminal prosecution against Plaintiff [] by alleging offenses that [they] knew in advance to be false." ECF 11, at 11 ¶ 53. She further alleges that Mackert and Skinner "did so without probable cause" and with "malice, evil motive, and ill will . . . to cover up their stalking, battering, arresting and injuring her the day prior." *Id.* at 12 ¶¶ 54–55. Mackert and Skinner contend that "Plaintiff's claims are simply a recital of the elements of malicious prosecution" and fail to meet the requisite pleading standard to maintain a claim. ECF 25-1, at 3. The Court disagrees and finds that Plaintiff has plausibly alleged a claim for malicious prosecution.

---

[4] The claims against Broznowicz include IIED (Count VII), racial discrimination (Count IX), and a § 1983 claim (Count VIII). The sole claim brought against Lehnert is IIED (Count VII).

A malicious prosecution claim under Maryland law requires "that the defendant instituted or continued a criminal proceeding; the proceeding was resolved in favor of the accused; there was no probable cause for the proceeding; and the defendant acted with malice; or for the primary purpose other than that of bringing an offender to justice." *Burley v. Balt. Police Dep't.*, 422 F. Supp. 3d 986, 1035 (D. Md. 2019) (citing *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000)).

First, Plaintiff plainly alleges, and Mackert and Skinner do not appear to dispute, that Mackert and Skinner instituted a criminal proceeding against Plaintiff and that the criminal case was resolved in favor of Plaintiff with a *nolle prosequi* judgment. ECF 11, at 7–8. This allegation satisfies the first and second elements of the claim. *See Bailey-Bey v. Mosby*, Civ. No. DLB-22-2778, 2023 WL 4948284, at *4 (D. Md. Aug. 3, 2023) (explaining that the Fourth Circuit has held that "dismissal of charges by way of *nolle prosequi* [i]s sufficient to meet the favorable termination requirement of a malicious prosecution claim") (citing *Owens*, 767 F.3d at 390). Plaintiff also sufficiently alleges the fourth element, by claiming that Skinner and Mackert brought criminal charges against her and did so with the improper purpose of retaliation and "to cover up [Mackert and Skinner's] stalking, battering, arresting, and injuring her the day prior." ECF 11, at 12 ¶ 55. And while Plaintiff alleges that only Mackert "swore out criminal charges" against her, Plaintiff further alleges that it was Skinner who attended her criminal trial date and thus assisted in Plaintiff's criminal prosecution. *Id.* at 11 ¶ 28. "Where a party instigates, aides or assist[s] in a criminal prosecution he/she may be liable even where he/she did not swear out a warrant." *Smithfield Packing Co., Inc. v. Evely*, 905 A.2d 845, 854 (Md. App. 2006) (citations omitted).

With respect to the third element, Plaintiff asserts that Mackert and Skinner "arrested her without probable cause." ECF 11, at 12 ¶ 54. Defendants argue that Plaintiff's claim fails because she "provides no further explanation or factual detail(s) to support her legal conclusion." ECF 25-

1, at 3. Plaintiff counters that the complaint specifically "allege[s] Defendants 'knew [the charges] to be false' and acted to conceal their own misconduct." ECF 26-1, at 7. Plaintiff contends that "[t]hese allegations go beyond 'mere labels' by identifying the retaliatory motive and factual context (post-reporting charges)," thus satisfying the lack of probable cause element. *Id.*

Probable cause means "'a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceedings complained of.'" *Foy v. Giant Food Inc.*, 298 F.3d 284, 290 (4th Cir. 2002) (quoting *One Thousand Fleet Ltd., P'shp. v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)). Here, Mackert and Skinner filed charges against Plaintiff for assault pursuant to Md. Code Ann., Crim. L. § 3-203 and common law obstructing and hindering. ECF 11, at 7 ¶ 24. Md. Code Ann., Crim. L. § 3-203 provides that "[a] person may not intentionally cause physical injury to another if the person knows or has reason to know that the other is . . . a law enforcement officer engaged in the performance of the officer's official duties[.]" Md. Code Ann., Crim. L. § 3-203(c)(2)(i). The elements of an obstructing and hindering charge include:

> (1) A police officer engaged in the performance of a duty;
> (2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty;
> (3) Knowledge by the accused of facts comprising element (1); and
> (4) Intent to obstruct or hinder the officer by the act or omission constituting element (2).

*Cover v. State*, 466 A.2d 1276, 1284 (Md. 1983).

As to the assault charge, the pleadings do not suggest that Plaintiff assaulted (or injured) Mackert and Skinner when she was allegedly forced to the ground and handcuffed. Instead, Plaintiff alleges that she "cried out for help." ECF 11, at 5 ¶ 15. Accepting Plaintiff's allegations as true, as the Court must at this stage, merely yelling for assistance fails to establish probable cause for Mackert and Skinner to bring an assault charge against Plaintiff. Plaintiff's amended complaint also plausibly alleges that Mackert and Skinner lacked probable cause to bring the

obstructing and hindering charge because Plaintiff properly alleges that she did not obstruct or hinder their investigation. Rather, Plaintiff claims that she cooperated with them by "repeatedly inform[ing] [them] that she was not the missing juvenile," "confirm[ing] the name they were looking for was not her name," and advising she did not "have identification with her as she had just stepped out to go to the store." *Id.* ¶ 12.

Further, Plaintiff alleges that Mackert and Skinner did not bring charges until *after* she attempted to complain about their actions. *Id.* at 7 ¶ 24. Plaintiff argues that this timing points to a "retaliatory motive," from which the Court can infer that Mackert and Skinner lacked probable cause to file the charges. ECF 26-1, at 7. Taking the allegations in the light most favorable to Plaintiff, the fact that Mackert and Skinner did not bring charges against her until after she attempted to file a complaint supports a plausible inference that they lacked probable cause to bring the charges filed. Therefore, Plaintiff has adequately plead all four elements of a malicious prosecution claim.

### B.    Count V: Abuse of Process Against Skinner and Mackert

Plaintiff alleges that Mackert and Skinner engaged in an abuse of process because they "used the criminal justice process . . . for an improper purpose, namely, to cover up their harassing, stalking, following of, detention, arrest, [and] excessive use of force on Plaintiff." ECF 11, at 12 ¶ 58. Mackert and Skinner counter that "Plaintiff has not alleged any act(s) taken by Ofc. Skinner and/or Ofc. Mackert after the issuance of any legal process that constitutes an improper use of said process." ECF 25-1, at 5. The Court agrees with Mackert and Skinner.

As the Supreme Court of Maryland observed, the tort of "abuse of process" exists to "provide a remedy for those cases 'in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.'" *One Thousand Fleet Ltd., P'shp,*

694 A.2d at 956 (quoting W. Keeton, Prosser & Keeton on the Law of Torts § 121, at 897 (5th ed. 1984)). "To sustain a cause of action for abuse of process, the plaintiff must prove: first, that the defendant wilfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *Id.* (first citing *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 205 (Md. 1985); and then citing *Berman v. Karvounis*, 518 A.2d 726, 727 (Md. 1987)). The "mere issuance of the process itself . . . is not actionable, even if it is done with an 'ulterior motive' or 'bad intention.'" *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. App. 2004). "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 311 (Md. 1984) (quoting W. Prosser, Handbook of the Law of Torts 846–47 (4th ed. 1971)).

Plaintiff fails to plead that Mackert and Skinner engaged in any improper use of process after it was issued. ECF 11, at 12 ¶¶ 57–59. She merely pleads that they "initiated" the criminal process "for a purpose other than that for which it was designed[.]" *Id.* ¶ 59. As Mackert and Skinner maintain, "the mere issuance of the process itself . . . is not actionable, even if it is done with an 'ulterior motive' or 'bad intention.'" *Campbell*, 852 A.2d at 1044; *see* ECF 25-1, at 5 ("Even if Defendants were to 'initiate' criminal proceedings with bad intent or motive, that alone does not support, or even relate, to an abuse of process claim."). Plaintiff also alleges that Mackert and Skinner "continued" the "criminal process," ECF 11, at 12 ¶ 59, but this again misses the mark because Plaintiff fails to allege Mackert and Skinner perverted the process to satisfy an ulterior motive. *See Herring v. Citizens Bank & Trust Co.*, 321 A.2d 182, 189–90 (Md. App. 1974) (providing an example of abuse of process from "dictum in *Zablonsky v. Perkins*, 230 Md. 365,

16

370, 187 A.2d 314, 317, [which] indicated that the filing of otherwise appropriate criminal charges for larceny after trust in an attempt 'to use the State's criminal process as a private collection agency' might well be 'a perversion of legal process to improper ends, which might give rise to an action for an abuse of process'"). Here, Plaintiff alleges that Mackert and Skinner did nothing more than "carry out the [criminal] process to its authorized conclusion." *Palmer Ford, Inc.*, 471 A.2d at 311. Even if done with bad intentions, this allegation fails to support an abuse of process claim. *See id.*

### C.    Count VII: IIED Claim Against All County Officers

IIED claims "may succeed only when the defendant's conduct was 'so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community.'" *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 399 (D. Md. 2011) (quoting *Borchers v. Hyrchuk*, 727 A.2d 388, 392 (Md. App. 1999)). "Moreover, the outrageous conduct must cause a 'severely disabling emotional response,' such that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris v. Jones*, 380 A.2d 611, 616 (Md. 1977)). "[T]he extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (alteration in original) (citing *Harris*, 380 A.2d at 616). As of 2010, "[i]n the 30 years since the Court of Appeals recognized the tort of IIED, it has upheld such claims only four times." *Lasater v. Guttmann*, 5 A.3d 79, 90 (Md. App. 2010). "As such, '[t]he tort of intentional infliction of emotional distress is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Williams*, 836 F. Supp. 2d at 399 (alteration in *Williams*) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. App. 1995)).

The County Officers argue that Plaintiff's allegations that she was assaulted, battered, and photographed before being handcuffed and brought to the ground, even if motivated by racial animus, fail to "meet the demanding" pleading standard for intentional infliction of emotional distress. ECF 25-1, at 6. Plaintiff counters that the outrageous conduct standard has been met because "[p]hysical restraint combined with racial targeting elevates conduct beyond ordinary negligence or even assault." ECF 26-1, at 10. She also argues that "unauthorized photography during detentions" has been recognized as "invasive and humiliating" to meet the requisite standard for an IIED claim. *Id.*

"For the claim to survive, Defendants must have disregarded entirely [the plaintiff's] dignity as a human being." *Awah v. Mansfield Kaseman Health Clinic*, Civ. No. PX-21-938, 2021 WL 6197415, at \*9 (D. Md. Dec. 30, 2021) (collecting cases). The wrongs Plaintiff alleges here, including "forc[ing] her to be photographed"; "placing her in handcuffs"; and "intentionally. pull[ing] her to the ground," though undoubtably serious, do not rise to the level of extreme and outrageous conduct necessary to sustain an IIED claim. ECF 11, at 15–16 ¶ 69. As noted by the County Officers, Plaintiff's argument that racial animus elevates the County Officers' conduct to an extreme and outrageous level primarily relies on her assertion that the Maryland Supreme Court in *Okwa v. Harper* found that "officers' racial slurs and excessive force during [a] traffic stop supported [an] IIED claim." ECF 26-1, at 10 (citing *Okwa v. Harper*, 360 Md. 161, 196–96 (2000)). The Court observes that the *Okwa* opinion does not involve a traffic stop, nor does it analyze an IIED claim because the IIED claim was dismissed by the lower court and not appealed. *See Okwa*, 360 Md. at 177 n.9. Moreover, the language quoted by Plaintiff in support of her argument does not appear anywhere in the *Okwa* opinion.

18

Plaintiff also relies on *Haines v. Vogel* in support of her proposition that "unauthorized photography during detentions [has been considered] invasive and humiliating" because supposedly in *Haines*, "non-consensual sexualized photography during arrest [was] deemed outrageous." ECF 26-1, at 10 (citing *Haines v. Vogel*, 250 Md. App. 209, 233 (2021)). However, *Haines* did not involve an arrest, but rather a dispute between "estranged former spouses," where the plaintiff brought an IIED claim against his ex-spouse, alleging that she interfered with his relationship with their child. *Haines*, 250 Md. App. at 231. There was no allegation of sexualized photography, and the court in that case dismissed the plaintiff's IIED claim with a reminder that "claims of IIED are reserved for the most serious and emotionally devastating acts." *Id.* at 233. Consequently, Plaintiff has failed to allege that the County Officers' actions rise to the extreme and outrageous level required to pursue an IIED claim.

The harms alleged by Plaintiff also fail to meet the severe emotional distress prong of an IIED claim. Plaintiff argues that her "mental health consequences . . . demonstrate severe and enduring harm satisfying [*Harris*]'s high bar." ECF 26-1, at 11. The County Officers counter that "Plaintiff has failed to plead that she cannot function or carry on with 'necessary matters' as required" to satisfy the severe emotional distress prong of an IIED claim. ECF 27, at 7 (quoting *Leese v. Balt. City*, 64 Md. App. 442, 472 (1985)).

"In the context of an IIED claim, 'mere allegations of emotional trauma or humiliation are insufficient.'" *Doe v. Anne Arundel Cnty.*, Civ. No. JRR-23-3451, 2025 WL 675059, at *25 (D. Md. Mar. 3, 2025) (quoting *Grant v. Atlas Rest. Grp., LLC*, Civ. No. GLR-20-2226, 2021 WL 2826771, at *5 (D. Md. July 7, 2021)). "To survive a motion to dismiss, the facts alleged must give rise to the inference that, because of the defendant's egregious conduct, the plaintiff experienced 'severely disabling emotional trauma,' . . . , *i.e.*, that she was rendered 'unable to

function' or 'unable to attend to necessary matters.'" *Id.* (quoting *Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*, Civ. No. ELH-20-0423, 2021 WL 1720235, at \*14 (D. Md. Apr. 30, 2021)). "Plaintiffs must therefore 'plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma.'" *Id.* (quoting *Lewis-Davis*, 2021 WL 1720235, at \*14).

Plaintiff vaguely lists her emotional distress symptoms as "physical and/or non-physical injury" and "pain, suffering, fear, fright, humiliation, inconvenience, embarrassment, and severe emotional distress." ECF 11, at 16 ¶ 72. Plaintiff also describes one instance where "the presence of Skinner caused [Plaintiff] to shake with fear and [be]come overwhelmed with anxiety," and that she has been "forced to seek mental health assistance." *Id.* at 8 ¶¶ 26, 28, 31. And although Plaintiff argues that her "mental health consequences . . . demonstrate severe and enduring harm," ECF 26-1, at 11, Plaintiff fails to provide sufficient facts regarding the "nature, intensity, and duration" of her allegedly severe and enduring mental health consequences. *See Anne Arundel Cnty.*, 2025 WL 675059, at \*25. These allegations do not indicate that Plaintiff experienced "severely disabling emotional trauma," such that she was rendered "unable to function" or "attend to necessary matters." *Id.* For these reasons, Plaintiff's IIED claim is dismissed as to all four County Officers.

### D.    Count IX: Racial Discrimination Against Mackert, Broznowicz, and Skinner

Plaintiff brings a racial discrimination claim against Mackert, Broznowicz, and Skinner pursuant to 42 U.S.C. § 1981 and "Maryland State Law." ECF 11, at 19–21. 42 U.S.C. § 1981 bans "all racial discrimination in the making of public and private contracts." *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)). Section 1981 provides "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit

of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens." 42 U.S.C. § 1981(a).

Mackert, Broznowicz, and Skinner argue that "when suit is brought under § 1981 against

a state actor, 42 U.S.C § 1983 constitutes 'the *exclusive* federal remedy for violation of the rights

guaranteed in § 1981.'" ECF 25-1, at 7 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733

(1989)) (emphasis in ECF 25-1). Regardless of the accuracy of this statement, Plaintiff does not

contest it and instead contends that she has "sufficiently pled a standalone racial discrimination

claim *under Maryland law*," specifically identifying Md. Code Ann., State Gov't § 20-606. ECF

26-1, at 12.[5] Thus, Plaintiff's response reflects that she abandons her 42 U.S.C. § 1981 claim and

instead seeks to pursue Count IX as "a standalone racial discrimination claim under Maryland

law." ECF 26-1, at 12.

Plaintiff, however, has failed to properly plead a standalone discrimination claim under

Maryland law. Though the amended complaint vaguely references "Maryland State Law," ECF

11, at 19, and "Maryland state law prohibiting racial discrimination," *id.* at 21 ¶ 95, Plaintiff only

---

[5] Though it need not reach the issue given Plaintiff's abandonment of her § 1981 claim, the Court notes that despite the County Officers' argument to the contrary, "§ 1981 claims have proceeded against individual government officials." *Stout v. Reuschling*, Civ. No. TDC-14-1555, 2015 WL 1461366, at \*7 (D. Md. Mar. 27, 2015) (citing *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 348 (1st Cir. 1995); then citing *Morrow v. Farrell*, 187 F. Supp. 2d 548, 553 (D. Md. 2002); and then citing *Gray v. Maryland*, 228 F. Supp. 2d 628, 639 (D. Md. 2002)). "While § 1981 often is used to assert employment discrimination claims against private actors, it also protects against the 'racially motivated misuse of government power' by police officers." *Anderson v. Seat Pleasant Police Dep't*, Civ. No. DLB-22-1542, 2023 WL 5509167, at \*10 (D. Md. Aug. 25, 2023), *aff'd*, No. 23-1981, 2024 WL 863658 (4th Cir. Feb. 29, 2024) (quoting *Stout*, 2015 WL 1461366, at \*5). As Judge Chuang noted, "[c]loser examination of *Jett*[, 491 U.S. at 701, *Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir. 1989), and a 1991 Amendment to § 1981] make clear that the rule articulated in those cases applies only to lawsuits against state or municipal entities, not an action brought against a law enforcement officer in his individual capacity." *Stout*, 2015 WL 1461366, at \*6 (alteration added).

specifies the state statute under which she purportedly brings her racial discrimination claim in responding to the motion to dismiss. ECF 26-1, at 12 (stating that Plaintiff's claim of discrimination arises under Md. Code Ann., State Gov't § 20-606). "It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of her opposition briefing." *Allgaier v. Microbiologics, Inc.*, Civ. No. ELH-22-01900, 2023 WL 2837336, at *4 (D. Md. Apr. 7, 2023) (collecting cases). Thus, Plaintiff cannot amend her pleading by filing a responsive brief that belatedly identifies the state law grounds for her discrimination claim.

Even if the Court were to permit Plaintiff to proceed with an allegation of a violation of § 20-606, the claim would still fail. State Government Article § 20-606 encompasses the Maryland Fair Employment Practices Act, and applies to discrimination in employment relationships, not "discrimination in public accommodations, including law enforcement actions, based on race," as Plaintiff claims. ECF 26-1, at 12; *see, e.g.,* Md. Code Ann., State Gov't § 20-606(a) (describing "[u]nlawful employment practices" including that "an employer may not . . . fail to hire, discharge, or otherwise discriminate against any individual . . . because of . . . the individual's race" and other protected factors). Accordingly, Count IX must be dismissed.[6]

---

[6] Moreover, Plaintiff also fails to provide factual support for her claims alleging racial discrimination. She alleges that Mackert and Skinner "acted with racial animus, singling Plaintiff out for harsher treatment based on her race." ECF 11, at 12 ¶ 95. However, Plaintiff's contention of racial animus is solely based on her allegation that she was stopped because she met the description of the missing person that the County Officers were looking for. *Id.* at 5 ¶¶ 9–10. No other facts, as pled, point to racial animus or discrimination. *Cf. Carey v. Baltimore Cnty., MD*, Civ. No. RDB-22-0782, 2022 WL 16951246, at *5 (D. Md. Nov. 15, 2022) (plaintiff failed to provide factual support beyond his own speculation that a traffic stop and subsequent narcotics search were racially motivated); *Stout*, 2015 WL 1461366, at *2 (denying defendants' motion to dismiss a § 1981 racial discrimination claim where defendants called the plaintiff racial epithets while brutally assaulting him); *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 869 (D. Md. 2017) (plaintiff sufficiently alleged a racially motivated stop where the officer said he stopped her for a lack of insurance, but then questioned her on her immigration status and family heritage and not her insurance).

E.    **Count VIII: § 1983 Claim Against Broznowicz**

Plaintiff brings a claim under 42 U.S.C. § 1983 alleging violations of the Fourth

Amendment, specifically for unlawful seizure, excessive force, and false arrest, against Mackert,

Skinner, Broznowicz, and Baltimore County. ECF 11, at 17. The County Officers seek to dismiss

the claim against Broznowicz only. ECF 25-1, at 10. 42 U.S.C. § 1983 is not itself a source of

substantive rights but provides "a method for vindicating federal rights." *Albright v. Oliver*, 510

U.S. 266, 271 (1994) (quotation omitted). It allows suits against any "person" acting under color

of state law who subjects the claimant to "the deprivation of any rights, privileges, or immunities

secured by the Constitution." 42 U.S.C. § 1983. The Fourth Amendment protects the "right of

the people to be secure in their persons . . . against unreasonable searches and seizures." U.S.

Const. amend. IV.

With respect to Broznowicz, Plaintiff does not appear to allege that he is responsible for

the unlawful seizure, excessive force, or false arrest, but instead claims that he, along with "all

named defendant officers spoke about Skinner and Mackert's actions in assaulting and arresting

[Plaintiff] then coordinated their statements and actions with the goal of deterring and discouraging

[Plaintiff] from filing a formal complaint." ECF 11, at 6 ¶ 20. Specifically, she claims that

Mackert and Skinner "coordinat[ed] with Broznowicz and Lehnert to discourage [Plaintiff] from

filing a formal complaint in lying to her and leading her to believe she caused the suffering and

injury she endured" during the incident. *Id.* at 16 ¶ 71.

The County Officers move to dismiss the § 1983 claim against Broznowicz on the ground

that Plaintiff "does not specify or parse any conduct . . . by Defendant Broznowicz that would

implicate § 1983 or the Fourth Amendment whatsoever" except to "mention that Ofc. Broznowicz

. . . allegedly 'acted under color of law.'" ECF 25-1, at 10 (quoting ECF 11, at 17 ¶ 75). Plaintiff

counters that "[s]upervisors may be liable for 'integral participation' in constitutional violations,

including post-hoc conspiracies to conceal misconduct." ECF 26-1, at 14 (purportedly quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). She contends that she "has plausibly alleged claims against Officers Broznowicz and Lehnert by demonstrating their 'integral participation' in a coordinated cover-up scheme" based on her allegation that "all officers 'coordinated [...] to deter and discourage [Plaintiff] from filing a formal complaint.'" *Id.* at 13–14 (quoting ECF 11, at 6 ¶ 20). In reply, the County Officers first point out that "Plaintiff did not bring a § 1983 claim against Defendant Lehnert," and then assert that by now attempting to argue "supervisory liability" Plaintiff attempts to impermissibly "bring a new theory of liability without amending her complaint. ECF 27, at 9–10. The County Officers argue, in the alternative, that even if Plaintiff alleged supervisory liability, she still fails to plausibly allege such a claim. *Id.* at 10.

Plaintiff's allegations relating to Broznowicz sound in conspiracy. *See* ECF 26-1, at 14 (claiming that Bronowicz was involved in a "post-hoc conspirac[y] to conceal misconduct"). To establish a civil conspiracy under § 1983, a plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006–07 (4th Cir. 1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. *See Murdaugh Volkswagen v. First Nat'l Bank*, 639 F.2d 1073, 1075–76 (4th Cir. 1981). "A conspiracy may . . . 'be inferred from the things actually done.'" *Id.* at 1075 (quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp 499, 532 (E.D. Mich. 1974)). However, circumstantial evidence consisting

24

of "coincidence piled on coincidence" is insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law. *Murdaugh*, 639 F.2d at 1075.

To the extent Plaintiff alleges that a conspiracy under 42 U.S.C. § 1983 existed and involved Broznowicz, that claim fails. "To show joint, concerted action, plaintiffs must, at minimum, provide 'specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.'" *Johnson v. Allen*, 416 F. Supp. 3d 550, 561 n.5 (E.D.N.C. 2018) (quoting *Hinkle*, 81 F.3d at 421). "Conclusory allegations of a conspiracy do not satisfy this 'meeting of the minds' element and therefore fail to state a claim." *Id.* (citing *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995); and then citing *Gooden v. Howard Cty.*, 954 F.2d 960, 970 (4th Cir. 1992) (en banc)). Plaintiff baldly asserts that Broznowicz, along with the other County Officers, coordinated their statements. ECF 11, at 6 ¶ 20. The only factual allegation she advances in support of this alleged coordination is that "Sergeant German," not a party to this action, "dismissed her complaints" and "advis[ed] her that the incident was her own fault[.]" *Id.* ¶ 19. Plaintiff fails to allege how Sergeant German's statements somehow indicate that Broznowicz and the other County Officers joined in a conspiracy. In fact, Plaintiff fails to allege any facts related to Broznowicz at all, except that Mackert was assisting him with a "missing person investigation." *Id.* at 4 ¶ 8. These sparse factual allegations combined with merely conclusory statements do not give rise to a plausible § 1983 conspiracy claim against Broznowicz.

The Court also agrees with the County Officers that Plaintiff does not allege a supervisory liability claim under § 1983 against Broznowicz, and even if she did, that claim would fail. To plead supervisory liability in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and (3) that there was an
affirmative causal link between the supervisor's inaction and the particular
constitutional injury suffered by the plaintiff.

*Middleton v. Baltimore City Police Dep't*, Civ. No. ELH-20-3536, 2022 WL 268765, at \*11–12

(D. Md. Jan. 28, 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiff's complaint only references supervision with respect to her allegations against

Baltimore County in general, not Broznowicz. *See, e.g.*, ECF 11, at 21 ¶ 96 (alleging that

"Baltimore County has failed to properly train and supervise its officers"). Further, Plaintiff does

not allege that Broznowicz supervised Mackert or Skinner and instead claims that Mackert "was

assisting [ ] Broznowicz [ ] with a missing person investigation." *Id.* at 4 ¶ 8. Plaintiff also does

not allege that Broznowicz had any actual or constructive knowledge of Mackert and Skinner's

actions and does not plead any facts related to Broznowicz's response to these actions.

Additionally, Plaintiff cites *Starr v. Baca* in support of her argument that "[s]upervisors

may be liable for 'integral participation' in constitutional violations, including post-hoc

conspiracies to conceal misconduct." ECF 26-1, at 13 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207

(9th Cir. 2011)). While *Starr* does address the concept of supervisory liability, it does not stand

for the broad proposition Plaintiff contends it does and does little more than generally reaffirm

existing jurisprudence addressing supervisory liability. *See Starr*, 652 F.3d at 1207 ("Thus, when

a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for

his or her own culpable action or inaction, not held vicariously liable for the culpable action or

inaction of his or her subordinates."); *id.* at 1208 ("Starr alleges that Sheriff Baca's knowledge of

the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his

subordinates, coupled with his inaction, amounted to acquiescence in the unconstitutional conduct

of his subordinates."). Indeed, the alleged reference to supervisory liability for "integral

participation" does not appear on the page cited by Plaintiff, or anywhere in the *Starr* opinion. Regardless, the general principles of supervisory liability remain undisturbed by *Starr*, and liability cannot lie since Plaintiff has failed to allege that Broznowicz was a supervisor or had knowledge of Mackert and Skinner's alleged unlawful actions.

Finally, the Court confirms that Plaintiff did not assert a § 1983 claim against Lehnert, *see* ECF 11, at 17 (bringing her § 1983 claim specifically against defendants Mackert, Broznowicz, Skinner, and Baltimore County). Even if she had, the alleged involvement of Lehnert mirrors that of Broznowicz, *see* ECF 11, at 16 ¶ 71 (alleging that Mackert and Skinner "coordinat[ed] with Broznowicz and Lehnert to discourage [Plaintiff] from filing a formal complaint"), therefore any alleged conspiracy against Lehnert fails for the same reasons as the claim against Broznowicz. Plaintiff's § 1983 claims asserted against Broznowicz (and any against Lehnert) must be dismissed.

## IV.    CASE CITATION ISSUES

The Court observes that many of the case citations contained in Plaintiff's filings—perhaps as many as half—appear to be inaccurate or non-existent. For example, Plaintiff's response to the motion to vacate misquotes case law. *See, e.g.*, ECF 24, at 4 (misquoting *Colleton Preparatory Acad., Inc v. Hoover Universal Inc.*, 616 F.3d 413 (4th Cir. 2010)), at 4–5 (incorrectly summarizing the facts of *Payton v. Guallart*, No. 3:22-cv-00042 (W.D. Va. 2022),[7] at 5 (misquoting *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d at 249, 251 (4th Cir. 1967), at 6 (misquoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)). Baltimore County alleges that Plaintiff makes even more significant errors in her response

---

[7] Plaintiff does not provide the entire citation, but it appears she meant to cite *Payton v. Guallart*, No. 3:22-CV-00042, 2022 WL 16636937 (W.D. Va. Nov. 2, 2022).

to the motion to dismiss, including citing to cases that do not appear to exist. *See* ECF 27, at 11 n.8. For example, Plaintiff cites to "*Bush v. Lucas*, 598 F. Supp. 3d 303, 316 (D. Md. 2022)" for the proposition that "[s]tate law racial discrimination claims survive independently when pled with specific factual basis." ECF 26-1, at 12 (italicization added). However, the Court has not found a case by this name at the citation provided. The closest match appears to be *Bush v. Lucas*, 598 F.2d 958 (5th Cir. 1979),[8] which does not stand for the proposition that Plaintiff proposes but instead addresses a claim of retaliatory demotion. *See Bush*, 598 F.2d at 959.

Plaintiff also quotes "*Md. Comm'n on Hum. Rels. v. Balt. Cty.*, 439 A.2d 1121, 1127 (Md. 1982)" for the proposition that "[d]ismissal would contravene Maryland's 'long-standing commitment to eradicate discrimination'"). ECF 26-1, at 13. However, the correct case name that corresponds with this reporter information is *Fields v. State*, 439 A.2d 1121 (1982). Plaintiff also directly quotes from "*Eichholz v. Camp*, 36 F.4th 908, 917 (4th Cir. 2022)," *see* ECF 26-1, at 14 (italicization added), but the closest case corresponding to that reporter information is *Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905 (9th Cir. 2022). Further, Plaintiff cites to a non-existent page of "*Holloway v. State*, 232 Md. App 272, 290 (2017)." ECF 26-1, at 13. That opinion ends at page 285. *See Holloway*, 232 Md. App. at 285. More significantly, *Holloway* does not stand for the proposition that Plaintiff suggests. *Compare* ECF 26-1, at 13 (citing *Holloway* for the proposition that "harm directly linked to discriminatory intent" is required to plead racial discrimination in Maryland), *with Holloway*, 232 Md. App. at 275 (involving appeal of petitioner's writ of coram nobis involving drug convictions, and not racial discrimination). Finally, as noted *supra*, Plaintiff quotes from *Okwa v. Harper*, 360 Md. 161, 196–97 (2000), and

---

[8] The Court also notes that reporter information similar to the case Plaintiff cites is found at *Est. of Alvarez v. Johns Hopkins Univ.*, 598 F. Supp. 3d 301 (D. Md. 2022), which also does not pertain to racial discrimination but instead addresses claims arising under the Alien Tort Statute.

*Haines v. Vogel*, 250 Md. App. 209, 233 (2021), but neither case contains the language she provides.

Given the volume and significance of the errors noted above, Plaintiff must explain them. Courts within the Fourth Circuit have issued *sua sponte* show cause orders where a party appears to have "cited to fictitious cases and misrepresented the holding of various cases" in a filing. *See, e.g., Lafferty v. Theiss et al.*, Civ. No. SAG-24-2642 (May 12, 2025) (ordering counsel to respond to "assertions regarding misrepresentation of citations and case content"); *Neal v. Frayer*, Civ. No. BAH-24-0778, 2025 WL 3204710, at *15 (D. Md. Nov. 17, 2025) (accepting counsel's explanation for erroneous case citations and not imposing sanctions); *In re Richburg*, 671 B.R. 918, 921 (Bankr. D.S.C. 2025) (issuing a sua sponte show cause order to address whether sanctions should be imposed for citation to fake cases); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 347 (E.D.N.Y. 2025) (collecting cases and noting that "[a]cross the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases"); *Kruglyak v. Home Depot U.S.A., Inc.*, 774 F. Supp. 3d 767, 770 (W.D. Va. 2025). Accordingly, based on the accusation that Plaintiff has included incorrect citations and inaccurate descriptions of case content in her filings, the Court orders Plaintiff's counsel to respond within twenty-one (21) days to the allegation of error noted by Baltimore County at ECF 27, at 11–12 n.8, and those chronicled by the Court in this opinion.

## V.    CONCLUSION

For the foregoing reasons, Baltimore County's motion to vacate the entry of default is **GRANTED**, and Baltimore County is to respond to the amended complaint within fourteen (14) days. The County Officers' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. It is denied as to Plaintiff's malicious prosecution claim but granted as to the abuse of process claim, IIED claim, racial discrimination claim, and the § 1983 claim against Broznowicz. All

29

claims against Lehnert and Broznowicz shall be DISMISSED. Further, the Court ORDERS Plaintiff's counsel to respond to the allegation that she included fake or inaccurate case citations in her filings within twenty-one (21) days.

A separate implementing order will issue.

Dated: <u>January 28, 2026</u>

_/s/_

Brendan A. Hurson
United States District Judge

30