UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

Abybatou Mbow )
)
)
)
Plaintiff, )
)
vs. )
)
)
OFFICER MICHAEL MACKERT, ID 6165 )
Individually and in his Official Capacity, )
et al. )
) Case No.: 1:24-cv-03674-BAH
)
)
Defendants. )
)
)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OPPOSITION TO DEFENDANT BALTIMORE COUNTY'S MOTION TO DISMISS**

**COMES NOW** Plaintiff, Abybatou Mbow, by and through undersigned counsel and files this memorandum in support of her opposition to defendant Baltimore County's motion to dismiss, pursuant to Fed. R. Civ. P., Rule 12(b)(6).  Plaintiff states in support of her opposition the following:

**SUMMARY OF PLAINTIFF'S ARGUMENTS**

Defendant Baltimore County, Maryland seeks dismissal of all claims alleged against it in Plaintiff's Amended Complaint. The County's motion fundamentally misapprehends the applicable pleading standards and improperly attempts to impose summary judgment requirements at the motion to dismiss stage. When the well-pleaded allegations in Plaintiff's Amended Complaint are accepted as true and viewed in the light most favorable to Plaintiff, as they must be, the Complaint plausibly alleges (i) an unreasonable seizure and excessive force under the Fourth Amendment, (ii) a Fourth Amendment false-arrest / unlawful-detention theory, (iii) municipal liability under Monell

1

based on custom/policy and deliberate indifference in training/supervision/discipline, and (iv) viable Maryland tort claims. The County's motion should be denied.

Baltimore County's 12(b)(6) motion misapplies the federal pleading standard, improperly fragments closely related constitutional theories, and asks the Court to resolve fact-bound immunity issues on the pleadings.  First, the County concedes that Plaintiff has plausibly alleged a Monell pattern of excessive force but then tries to sever that pattern from the unlawful seizure and false arrest components of the same Fourth Amendment encounter. The Amended Complaint pleads a single, continuous stop and detention of a Black woman, based on a vague description and race, escalating to force; the same alleged County customs—targeting Black witnesses and victims, failing to train on field interviews and de-escalation, and tolerating retaliation when they do not cooperate—plausibly support the entire Count VIII claim, not only its "excessive force" label.

Second, the County dismisses Plaintiff's five detailed prior incidents as "isolated" and "dissimilar," but at the Rule 8 and *Iqbal* stage, those incidents—together with Plaintiff's own experience—easily qualify as "numerous particular instances" of similar unconstitutional conduct sufficient to allege a persistent, widespread practice. Each involves Baltimore County officers using force and criminal charges against Black witnesses or victims in field-interview contexts, and multiple incidents led to lawsuits and settlements, giving policymakers notice. The County's insistence on judicial findings of liability and granular proof of training deficiencies demands evidentiary detail that the Court's own *Monell* standard does not require at 12(b)(6).

Third, the failure-to-train, supervise, and investigate claims (Counts X and XII) are pleaded with concrete factual content, not mere labels. Plaintiff alleges that County policymakers, including senior BCPD leadership, were aware of the recurring pattern; failed to adjust training on field interviews, de-escalation, and constitutional limits; tolerated violations of the Department's Field

Manual; and declined to meaningfully investigate or discipline officers, as illustrated by Sergeant German's dismissal of Plaintiff's complaint and the officers' coordinated effort to deter her from complaining. Those allegations satisfy the "affirmative link" and deliberate indifference requirements at this stage, especially given the Court's prior acknowledgment of the sufficiency of the underlying Fourth Amendment allegations in denying in part the officers' motion to dismiss.

Fourth, Mbow's racial discrimination claim (Count IX) is supported by more than a single sentence. The Amended Complaint alleges a County-wide culture of racial discrimination in policing, a pattern of disproportionate enforcement against Black individuals, and five prior incidents against Black witnesses and victims, all mirrored in Plaintiff's own stop "solely because she is a black woman." That is enough to state a plausible § 1981 *Monell* theory; any deficiency in the Maryland "state law" portion can be cured by amendment and does not justify dismissal of the federal claim.

Finally, the County's reliance on governmental and public-official immunity to defeat the negligence counts (XI and XIII) is premature. Whether hiring, training, supervision, and investigative failures in this case are "discretionary" or "ministerial" is a factual question, particularly in light of allegations that officers violated mandatory provisions of the County's own Field Manual. On a 12(b)(6) motion—where the Court must accept those allegations as true and resolve inferences in Plaintiff's favor—the Court should not deem all such acts discretionary as a matter of law, nor should it extend employee immunities to the County to foreclose negligence theories at the outset, especially while individual officers remain in the case after the Court's prior partial denial of their motion to dismiss.

For these reasons, and given the Court's own prior ruling that the Amended Complaint states viable Fourth Amendment and malicious prosecution claims against Officers Mackert and Skinner, the County's attempt to avoid Monell and related liability at the pleading stage is flawed. The motion to dismiss should be denied as to all counts asserted against Baltimore County, or, at minimum, Plaintiff should be granted leave to amend any claim the Court finds technically deficient.

## II. FACTUAL BACKGROUND

### A. Plaintiff's May 6, 2024 Encounter

On May 6, 2024, Baltimore County Police Officers Michael Mackert and Vincent Skinner stopped Plaintiff Abybatou Mbow, a Black woman, based solely on her race, gender, and clothing color matching a vague description of a missing juvenile. ECF No. 11 at 5 ¶¶ 10-11. Despite Plaintiff repeatedly explaining she was not the missing person, providing her correct name, and explaining she had no identification because she had just stepped out to the store, the officers continued to follow and harass her. Id. at 5 ¶¶ 12-13.

When Plaintiff attempted to leave, the officers jumped into their vehicles, cornered her in an alley, physically restrained her, forced her to the ground, handcuffed her, and took photographs without her consent. Id. at 5 ¶¶ 14-15. Plaintiff sustained physical injuries and severe emotional trauma. Id. at 6 ¶ 18. After confirming Plaintiff was not the missing person, officers released her but not before Officer Mackert berated her, stating "you did this to yourself." Id. at 6 ¶ 17.

When Plaintiff reported the incident at the Parkville precinct later that day, Sergeant German dismissed her complaints and blamed her for failing to provide identification. Id. at 6 ¶ 19. Officers coordinated their statements to discourage Plaintiff from filing a formal complaint. Id. at 6 ¶ 20.

The next day, May 7, 2024, Officer Mackert swore out retaliatory criminal charges against Plaintiff for assault and obstructing and hindering. Id. at 7 ¶ 24. Plaintiff was forced to retain counsel, prepare for trial, and endure significant emotional distress. Id. at 7-8 ¶¶ 27-29. On September 3, 2024, her jury trial date, the charges were dismissed by nolle prosequi. Id. at 8 ¶ 30.

**B. Pattern of Similar Incidents by Baltimore County Officers**

Plaintiff's experience was not isolated. The Amended Complaint alleges five specific prior incidents involving Baltimore County officers using excessive force against Black witnesses or victims during field interviews:

1. Vanetta Jackson (2015): A Black woman witness was attacked by two Baltimore County police officers when she refused to give her intoxicated son car keys for safety reasons. Officers punched her, threw her onto a car hood, twisted her arms, and broke her back. The officers then criminally prosecuted Jackson. Her lawsuit against Baltimore County settled. ECF No. 11 at 7 ¶ 23(a), 14 ¶ 65(a).

2. Alonzo Cox, Jr. (2017): A 16-year-old Black victim of attempted assault declined to provide a statement to a Baltimore County officer, stating he "did not want to talk about it." The officer then punched, kicked, choked, and pepper sprayed Cox. Cox was charged with resisting arrest and failure to obey an officer. ECF No. 11 at 7 ¶ 23(b), 14 ¶ 65(b).

3. Ryan Stinnett (2017): A Black man was assaulted by Baltimore County officers after a minor traffic accident. He was mistaken for a suspect and officers used excessive force despite his compliance. The County did not hold officers accountable. ECF No. 11 at 7 ¶ 23(c), 14 ¶ 65(c).

4. Howard Lewis (2019): A witness to a domestic disturbance was forcefully detained by Baltimore County police when he refused to give a statement. Despite identifying himself as a bystander, officers used pepper spray and arrested him. He later sued for excessive force and wrongful arrest. ECF No. 11 at 7 ¶ 23(d), 14 ¶ 65(d).

5. Elijah Lockley (2020): A witness to a traffic stop occurring across from his home. A Baltimore County officer lied about Lockley's observations, rushed onto Lockley's private property into his home, and with other officers attacked Lockley, arrested him, and slammed his head into a post causing severe injury. Officers subjected Lockley to a strip search and threatened to make Lockley's mother and sister his "bitch." Lockley was charged criminally to cover up the officers' actions. His charges were nolle prossed on March 12, 2020. His lawsuit against Baltimore County settled. ECF No. 11 at 7 ¶ 23(e), 14-15 ¶ 65(e).

Each incident shares common characteristics: (1) Black victim or witness; (2) field interview or investigatory encounter; (3) excessive force when individual declined to fully cooperate; (4) retaliatory criminal charges; and (5) lack of County accountability despite lawsuits and settlements.

**C. Systematic Failures Alleged**

Plaintiff alleges that Baltimore County has:

- Failed to adequately train officers on proper field interview techniques, de-escalation strategies, and constitutional parameters for detaining witnesses and victims. ECF No. 11 at 18-19 ¶ 85.
- Maintained policies, practices, and customs permitting excessive force, unlawful detention, and racial profiling against Black individuals. *Id*. at 22 ¶¶ 102-103.
- Failed to properly supervise and discipline officers engaged in constitutional violations. *Id*. at 23-24 ¶ 108.
- Failed to investigate allegations of police misconduct despite repeated incidents. *Id*. at 26 ¶ 122.

6

- Acted with deliberate indifference to the constitutional rights of citizens, particularly Black individuals. *Id*. at 24 ¶ 109, 27 ¶ 123.

### III. STANDARD OF REVIEW

#### A.  Motion to Dismiss Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions or conclusory statements do not suffice.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005); *see also Eichholz v. Camp*, 36 F.4th 908, 917 (4th Cir. 2022)(Courts must accept factual allegations as true and draw reasonable inferences in Plaintiff's favor).

#### B.  *Monell* Liability Standard

Title 42 U.S.C. Section 1983 allows a plaintiff to bring a claim against a local government if that government caused a deprivation of a constitutional right through an official policy or custom. Monell v. Department of Social Services, 436 U.S. 658, 690 (1978). A local government "is only liable under Section 1983 for its own violations of federal law." Sharpe v. Winterville Police Department, 59 F.4th 674, 679 (4th Cir. 2023).

A plaintiff must plausibly plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).

Further, a plaintiff can demonstrate a policy or custom through four methods: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the [constitutional] rights of citizens' or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

### C. Deliberate Indifference for Failure to Train

"Inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference can be shown through: "(1) proof of repeated constitutional violations for which the errant municipal employees were not discharged or reprimanded, which will permit an inference that policymakers acquiesced in or tacitly authorized the officers' unconstitutional actions; or (2) proof that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

## IV. ARGUMENT

### A. Plaintiff Has Adequately Pleaded Count VIII - Monell Claim for Fourth Amendment Violations

### 1. The Pattern and Practice Standard at the Pleading Stage

The County argues that Plaintiff has failed to adequately plead a "pattern and practice" of constitutional violations. However, the County conflates pleading standards with proof at trial.

"To plead municipal liability under Section 1983 in this District, a plaintiff must allege a practice so persistent and widespread that it rises to the level of a custom or usage with the force of law.'' Monell, 436 U.S. at 690–91. A custom cannot be shown by isolated or sporadic incidents, "[r]ather, there must be 'numerous particular instances"' of unconstitutional conduct in order to establish a custom or practice. Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003)(citing Kopf v. Wing, 942 F.2d 265, 269 (4th Cir. 1991) (Holding that if Plaintiff can prove the numerous instances of excessive force she alleges, in conjunction with the circumstantial evidence of a "circle the tents" approach to police brutality complaints, we think a fair-minded jury could find that the county has a custom or practice of letting incidents of excessive force go unpunished.).

The Fourth Circuit has held a Monell claim can be plausible at Rule 12 where the complaint alleges a persistent pattern/custom and policymakers' knowledge/deliberate indifference, including reliance on other reported/unreported incidents. Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402-405 (4th Cir. 2014)(volume of cases alleged to have Brady violations sufficient at pleading stage; alleged a pervasive practice of BCPD misconduct). Likewise, Monell custom can be shown by widespread practices and policymakers' knowledge. Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987). And, "[a]ctual or constructive knowledge of such customs may be inferred from the widespread extent of the practices…" Id. at 1387. The question is, therefore, what constitutes sufficient pleading of "numerous particular instances" and "persistent and widespread" practice. Accordingly, the County's criticisms misapply the pleading standard.

As to number of incidents, The County argues that "only" five incidents are insufficient. However, Fourth Circuit precedent does not establish a minimum number. Owens rejected rigid numeric arguments and illustrates that Monell claims are evaluated contextually, not by incident counting. Owens v. Baltimore City State's Attorney's Office, 767 F.3d 379, 402-403 (4th Cir. 2014)(holding that Owens has alleged facts -- the existence of "reported and unreported cases" and numerous "successful motions" -- which, if true, would buttress his legal conclusion)

Courts evaluate whether the alleged incidents, in context with other allegations, plausibly establish a persistent and widespread practice. Five specific incidents over five years, involving similar facts and the same class of victims, combined with allegations of training failures and lack of discipline, is adequate at the pleading stage as "[a] plaintiff fails to state a claim only when he offers "labels and conclusions" or formulaically recites the elements of his § 1983 cause of action. Iqbal, 556 U.S. at 678." Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 403.

As to similarity of incidents, the County claims the incidents involve "different factual circumstances, different officers, and different Fourth Amendment implications." ECF No. 32-1 at 6. This criticism actually supports Plaintiff's claim. If different officers across different years engage in the same pattern of conduct against the same class of individuals, that demonstrates a systemic problem, not isolated bad actors. That is precisely what Monell liability addresses: municipal policies or customs that lead multiple officers to engage in similar constitutional violations. The alleged, "different Fourth Amendment implications" argument, that too fails because all incidents involve excessive force during investigatory encounters with witnesses or victims. Whether the specific technical violation is characterized as unlawful seizure, excessive force, false arrest, or some combination is immaterial to the pattern: County officers use force against Black witnesses and victims during field interviews.

10

As to lack of "Judicial Determination," the County argues that "none of the referenced incidents resulted in any judicial determination of wrongdoing by the County or its agents." ECF No. 32-1 at 6. This argument would make *Monell* claims virtually impossible to plead, as municipalities typically settle cases to avoid judicial determinations of liability.   The relevant question is whether the County had notice of problematic conduct. Lawsuits and settlements provide such notice. The County's argument that it can avoid Monell liability by settling cases without admission of wrongdoing would create perverse incentives and contradict established law. Moreover, there is no heightened pleading standard for §1983 / Monell; Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994); and that is what Defendant County is requesting be required at this stage.

As to resolution information, like their judicial determination argument, this criticism is misplaced.   The County complains that Plaintiff "provides no information at all regarding the resolution of the other two" incidents (beyond Jackson and Lockley, which settled). ECF No. 32-1 at 5-6. However, Plaintiff is not required to provide exhaustive details about every incident. The allegations that multiple incidents occurred, some resulted in lawsuits, and at least two settled are sufficient at the pleading stage. Discovery will reveal additional details.   Moreover, the mere occurrence of the incidents, whether or not they resulted in litigation, demonstrates a pattern. The County's argument improperly suggests that only litigated incidents count, which would exclude potentially many more unreported or unlitigated instances of misconduct.

As to the County's source of information argument, the County notes that Plaintiff "fails to identify the source(s) for the facts attributed to these incidents." ECF No. 32-1 at 6. Again, there is no requirement that a plaintiff identify sources for factual allegations at the pleading stage. A Plaintiff may presumably learn of these incidents through public records, news reports, or other publicly available information. The County has not and cannot legitimately challenge the truth of

these incidents as all had substantial media coverage, and at the pleading stage, they must be accepted as true.

Here, Plaintiff's pleaded five specific prior incidents spanning 2015 to 2020, plus her own 2024 incident. Each incident involves: a) A Black individual; b) Identified as a witness or victim, not a criminal suspect; c) Field interview or investigatory encounter; d) Refusal or inability to comply with officer demands; e) Use of excessive force by Baltimore County officers; f) retaliatory criminal charges filed against the victim; and, g) lack of accountability despite lawsuits and settlements.   This is not a random collection of unrelated events. It is a coherent pattern demonstrating how Baltimore County officers respond when Black witnesses or victims do not cooperate to officers' satisfaction during field interviews: they escalate to excessive force, file retaliatory charges, and the officers face no discipline or correction.  The temporal span (five years) demonstrates persistence. The multiple incidents demonstrate widespread conduct, not isolated actions by a single officer. The similarity of facts demonstrates a pattern. The settlements in at least two cases (Jackson and Lockley) illustrate one source of County knowledge and exposure to liability, yet the pattern continued.

## 2. Excessive Force and Unlawful Seizure Are Interconnected

The County concedes that Plaintiff has adequately pleaded excessive force but argues she has failed to plead unlawful seizure or false arrest. This artificial distinction fails.

A person is seized when, under the totality of the circumstances, a reasonable person would not feel free to leave. United States v. Mendenhall, 446 U.S. 544 (1980). A seizure also occurs by application of physical force, even without prolonged restraint. California v. Hodari D., 499 U.S. 621 (1991).

Accordingly, as a matter of law, excessive force and unlawful seizure are often intertwined. When officers use force during an unlawful detention, both violations stem from the same conduct and the same training and supervisory failures. This court may recognize that Fourth Amendment use of force claims and unlawful detention claims frequently arise from the same factual predicate. Second, the pattern alleged by Plaintiff involves both excessive force and unlawful detentions. In each incident, officers lacked lawful basis to detain the individual (witnesses and victims, not suspects with probable cause) and used excessive force during those unlawful detentions. The training failures plead here are identical: officers do not understand the constitutional limits on field interviews with witnesses and victims, and they resort to force when individuals do not cooperate. Third, Plaintiff's own case demonstrates this integration. Officers stopped her based solely on race and a vague description, without reasonable suspicion that she had committed any crime. When she attempted to leave, they cornered her, physically restrained her, and forced her to the ground. The same training deficiencies caused both the unlawful seizure (stopping and detaining her without reasonable suspicion) and the excessive force (using physical force during that unlawful detention without probable cause to do so).

Here, Plaintiff alleges officers followed her, cornered her in an alley, grabbed her, forced her to the ground, physically restrained her by physical force and handcuffed her, and photographed her against her will.  The County's attempt to fragment Plaintiff's claims and limit liability to excessive force only is unsupported by law and contradicted by the facts alleged. The pattern includes both unlawful detentions and excessive force, arising from the same systemic failures.

3.  **Plaintiff Has Alleged Affirmative Links to Her Constitutional Violations**

13

The County next argues that Plaintiff has failed to allege "affirmative links" between County policies and her specific constitutional violations. This argument ignores Plaintiff's detailed allegations.

**a. Link Between Pattern and Plaintiff's Experience**

Plaintiff has alleged a pattern of County officers using excessive force against Black witnesses and victims during field interviews when those individuals do not comply with officer demands. Plaintiff's experience fits this pattern exactly: she is a Black woman, she was a misidentified witness (not a suspect), officers conducted a field interview, she declined to fully cooperate (lacked identification), and officers used excessive force. The pattern directly caused her injuries.

**b. Link to Training Failures**

Plaintiff alleges that "Baltimore County has failed to adequately train its officers on proper field interview techniques, de-escalation strategies, and constitutional parameters on detaining victims and witnesses or use of force." ECF No. 11 at 18-19 ¶ 85. This alleged training failure directly caused her injuries. Had officers been properly trained on field interview procedures, de-escalation, and constitutional limits, they would not have unlawfully detained and assaulted her.

**c. Link to Field Manual Violations**

Plaintiff specifically alleges that the officers' conduct "violated established police procedures for field interviews as outlined in the Baltimore County Police Department's Field Manual; which is binding on the named defendants." ECF No. 11 at 5 ¶ 13. Violations of the

County's own written policies demonstrate inadequate training and supervision, establishing the link between County failures and Plaintiff's injuries.

**d. Link to Failure to Investigate and Discipline**

Plaintiff alleges that the pattern continued because the County failed to investigate complaints and discipline officers. When Plaintiff reported the incident, Sergeant German dismissed her complaints. ECF No. 11 at 6 ¶ 19. Officers coordinated statements to discourage her from filing a complaint. Id. at 6 ¶ 20. This demonstrates how the County's failure to investigate and discipline perpetuated the pattern that caused Plaintiff's injuries.

The affirmative links are clear and direct. The County's argument to the contrary ignores the well-pleaded allegations.

**B. Plaintiff Has Adequately Pleaded Count X - Monell Claim for Failure to Train, Supervise, and Discipline**

Plaintiff has sufficiently pleaded her Count X, failure to train, supervise and discipline. The County Defendant's motion to dismiss as to county X, should therefore, be denied.

Failure to train, supervise, or discipline can establish municipal liability when it amounts to deliberate indifference. As the Supreme Court explained in City of Canton v. Harris, "inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." 489 U.S. at 388. The Fourth Circuit has held that repeated violations without discipline permits an inference that policymakers "acquiesced in or tacitly authorized the

officers' unconstitutional actions." Carter, 164 F.3d at 218. Plaintiff's allegations meet this standard. Additionally, the Fourth Circuit has identified two paths to show deliberate indifference: repeated violations without discipline, or obviously inadequate training. Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). Plaintiff's allegations satisfy both paths.

Here, Plaintiff has alleged repeated violations, five specific prior incidents of excessive force by County officers against Black witnesses and victims between 2015 and 2020, without discipline. The Amended Complaint further alleges one of multiple sources of knowledge; that at least two incidents (Jackson and Lockley) resulted in lawsuits that settled.  Despite these sources of notice and financial exposure, the County failed to discipline officers or implement corrective measures, as evidenced by the continuing pattern culminating in Plaintiff's 2024 case.  Plaintiff specifically alleges: "Despite knowledge of prior incidents of excessive force, racial profiling, and unlawful detention within the Baltimore County Police Department, Defendant Baltimore County has failed to take corrective action, investigate the conduct of its officers, or discipline officers who violate individuals' constitutional rights. This failure amounts to deliberate indifference to the rights of citizens like Plaintiff Mbow." ECF No. 11 at 23-24 ¶ 108.

## 1.  Plaintiff Has Alleged Obviously Inadequate Training

Plaintiff has also satisfied the second path to deliberate indifference by alleging that the need for training is obvious and the inadequacy likely to result in constitutional violations.  The Second Amended Complaint alleges that "Baltimore County has failed to adequately train its officers on proper field interview techniques, de-escalation strategies, and constitutional parameters on detaining victims and witnesses or use of force." ECF No. 11 at 18-19 ¶ 85. The need for such training is obvious. Field interviews with witnesses and victims are routine police tasks. The

constitutional parameters governing when officers may detain individuals and use force are well-established. De-escalation is a fundamental law enforcement skill.

The Supreme Court in *Canton* recognized that certain responsibilities are "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for training. 489 U.S. at 390. Field interviews with witnesses and victims who may not cooperate present precisely such situations. The recurring pattern of excessive force in precisely these situations demonstrates the obvious need for training.  Officers repeatedly fail to distinguish between criminal suspects (who may be detained with reasonable suspicion) and witnesses or victims (who generally may not). Officers repeatedly escalate to force when individuals decline, in the officers' eyes, to cooperate. Officers repeatedly violate the County's own Field Manual. These repeated failures demonstrate inadequate training.

## 2.   Plaintiff Has Sufficiently Identified Policymakers

The County argues that Plaintiff has "insufficiently references 'senior officers' and 'policymakers'" without identifying specific individuals with final policymaking authority. ECF No. 32-1 at 8. This criticism imposes improper evidentiary requirements at the pleading stage, a heightened pleading burden rejected by the Supreme Court. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (no heightened pleading standard for Monell claims). At the pleading stage, Rule 8 requires plausibility, not evidentiary detail. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Moreover, the Fourth Circuit has emphasized that Monell allegations need not be particularly detailed. Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 403 (4th Cir. 2014).  Whether an official qualifies as a final policymaker is a question of state law, not a pleading prerequisite. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

17

The specific names and titles of these individuals are matters for discovery. Plaintiff is not required to conduct a preliminary investigation to identify every policymaker before filing suit. Moreover, under Maryland law and basic organizational structure, police chiefs and senior command staff have final policymaking authority for police operations, including training, supervision, and discipline. The County cannot seriously dispute that its senior police officials are policymakers. Plaintiff sufficiently alleges that "Defendant Baltimore County, Maryland, acting through its policymakers, including senior officers within the Baltimore County Police Department, developed, maintained, and allowed the continued existence of unlawful policies, practices, and customs that caused the violation of Plaintiff Abybatou Mbow's constitutional rights." ECF No. 11 at 22 ¶ 102.

## 3.  The County's Demand for Evidentiary Detail Is Premature

The County argues that Plaintiff does not "describe with any particularity the specific deficiencies in any the County's training program(s)." ECF No. 32-1 at 5. This demand for evidentiary detail is premature.

Plaintiff has adequately alleged that training is inadequate by identifying the areas of deficiency (field interviews, de-escalation, constitutional limits) and demonstrating the inadequacy through the pattern of recurring violations. This is sufficient at the pleading stage. Specific evidentiary details about training programs are matters for discovery and summary judgment, not for a motion to dismiss.  Moreover, as the County is well aware, information about the County's specific training programs, curricula, hours of instruction, and instructor qualifications is in the County's exclusive possession. Plaintiff cannot access this information without formal discovery. Requiring such detail at the pleading stage would impose an impossible burden and contradict the notice pleading standards of Federal Rule of Civil Procedure 8.

**C. Plaintiff Has Adequately Pleaded Count XII - Monell Claim for Failure to Investigate**

### 1. Failure to Investigate as Deliberate Indifference

A municipality's systematic failure to investigate complaints of police misconduct can establish deliberate indifference supporting Monell liability. When policymakers are aware of a pattern of constitutional violations and fail to investigate or take corrective action, the municipality may be liable.  As the Fourth Circuit explained in Spell v. McDaniel, failure to supervise may support municipal liability "only where policymakers were aware of, and acquiesced in, a pattern of constitutional violations." 824 F.2d 1380, 1391 (4th Cir. 1987). Municipal liability requires "actual or constructive knowledge of the pattern and deliberate indifference by policymakers in failing to correct it." Id.

Failure to investigate complaints is a form of failure to supervise. When a municipality knows of misconduct but fails to investigate, it acquiesces in the violations and demonstrates deliberate indifference.

### 2. Plaintiff's Specific Allegations of Non-Investigation

Plaintiff alleges that "Defendant Baltimore County has consistently failed to properly investigate allegations of police misconduct, including but not limited to excessive force, racial profiling, and unlawful detentions, as evidenced by the incidents involving Vanetta Jackson (2015), Alonzo Cox Jr. (2017), Ryan Stinnett (2017), Howard Lewis (2019), and Elijah Lockley (2020)." ECF No. 11 at 26 ¶ 122.

Plaintiff further alleges that "This systematic failure to investigate police misconduct amounts to a custom or policy of deliberate indifference to the constitutional rights of citizens, particularly Black individuals, in violation of the Fourteenth Amendment's Due Process Clause." ECF No. 11 at 27 ¶ 123.

Most significantly, Plaintiff experienced this failure to investigate firsthand. When she reported the incident at the Parkville precinct, "Sergeant German (#4184) identified her and dismissed her complaints, advising her that the incident was her own fault for failing to provide identification, contrary to police department policy." ECF No. 11 at 6 ¶ 19.  This allegation demonstrates the County's practice; rather than investigating complaints against officers, County supervisors dismiss the complaints and blame the victims. This is deliberate indifference.

Plaintiff also alleges that "Prior to her arrival all named defendant officers spoke about Skinner and Mackert's actions in assaulting and arresting Ms. Mbow then coordinated their statements and actions with the goal of deterring and discouraging Mbow from filing a formal complaint." ECF No. 11 at 6 Â¶ 20. This coordination to prevent complaints reflects the County's custom of protecting officers rather than investigating misconduct.

### 3. The Pattern Demonstrates Systematic Failure

The five prior incidents, combined with Plaintiff's own experience of having her complaint dismissed, establish a pattern of the County failing to investigate misconduct. Multiple incidents resulted in lawsuits and settlements, yet the pattern continued. Officers faced no discipline. Training did not change. The same types of violations continued to occur.

This systematic failure to investigate despite repeated notice establishes deliberate indifference. The County cannot claim ignorance when it has been sued multiple times and paid settlements. The continued pattern demonstrates that the County chose not to investigate or correct the problem, which is precisely the type of deliberate indifference that supports Monell liability.

**D. Count IX Racial Discrimination Claim Should Survive as to Federal Claims**

The County argues that Plaintiff "alleges no relevant facts concerning the County" for Count IX. ECF No. 32-1 at 9. This is incorrect.

Plaintiff alleges that "Defendant Baltimore County, Maryland is liable for the actions of its police officers under the doctrine of *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), because it has permitted and condoned a culture of racial discrimination within its police department. Baltimore County has failed to properly train and supervise its officers to prevent racially discriminatory practices and has condoned a pattern of disproportionate enforcement against Black individuals." ECF No. 11 at 21 ¶ 96.  The pattern of prior incidents supports this allegation. Each of the five prior incidents involved a Black victim or witness. Plaintiff herself is a Black woman who alleges she was stopped "solely because she is a Black woman." ECF No. 11 at 5 Â¶ 11. The consistent racial pattern across multiple years and multiple officers demonstrates a systemic problem attributable to the County.

As for the "Maryland State Law" portion of Count IX, the County correctly notes that Plaintiff has not identified a specific Maryland statute. However, this deficiency affects only the state law portion of the count. The federal claims under Section 1981 remain viable based on the Monell allegations.

To the extent the Court finds any deficiency in Count IX, Plaintiff requests leave to amend to clarify or strengthen the allegations while preserving the federal claims.

**E. Counts XI and XIII - Governmental Immunity Does Not Bar Negligence Claims at This Stage**

**1. Maryland Governmental Immunity Is Not Absolute**

The County invokes governmental immunity as a complete bar to the negligence claims in Counts XI (negligent hiring, retention, and supervision) and XIII (negligent failure to investigate). While Maryland law does provide governmental immunity for certain governmental functions, this immunity is not absolute, and numerous questions preclude dismissal at this stage. On a motion to dismiss, unless the Complaint itself establishes a dispositive notice failure with no plausible basis for substantial compliance or good cause, dismissal is premature.

Maryland courts recognize that "a local governmental entity is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." DiPino v. Davis, 354 Md. 18, 47 (1999). Courts have held that operation of a police department is a governmental function. Clark v. Prince George's County, 211 Md. App. 548, 558 (2013). However, governmental immunity is subject to exceptions, and factual development is often necessary to determine its applicability. Moreover, public official immunity applies only to discretionary acts, not ministerial acts. State to Use of Clark v. Ferling, 220 Md. 109, 113 (1959).

Maryland recognizes negligent hiring/retention principles where an employer knew or should have known of an employee's dangerous propensities and the negligence proximately caused harm. Evans v. Morsell, 284 Md. 160, 395 A.2d 480 (1978). Here, Plaintiff sufficiently alleges the

County had knowledge (or should have had knowledge) of a pattern of complaints/incidents involving excessive force and discriminatory conduct, yet failed to take reasonable steps in training/supervision/retention, leading to the harm.  Moreover here, Plaintiff pleads that Counts XII and XIII are not premised on a generalized right to an investigation, but on a *Monell* theory that the County's systemic failure to investigate and discipline officer misconduct constitutes deliberate indifference that caused (and continues to cause) constitutional violations—i.e., it is evidence of a municipal custom/policy and causation under Monell, Spell, and Owens.

### 2. Factual Questions Preclude Dismissal

Plaintiff alleges that officers violated the Baltimore County Police Department's own Field Manual. ECF No. 11 at 5 ¶ 13, 18 ¶ 79. Following written departmental policies is a ministerial function, not a discretionary one. When employees fail to follow mandatory policies, governmental immunity may not apply.

Additionally, certain aspects of hiring, training, and supervision may be ministerial rather than discretionary. For example, conducting required background checks, providing mandatory training hours, maintaining required training records, and following prescribed investigation procedures are ministerial acts. If Plaintiff can demonstrate at a later stage that the County failed to perform these ministerial duties, immunity may not apply.

The distinction between ministerial and discretionary acts requires factual development. At the pleading stage, where facts must be accepted as true and inferences drawn in Plaintiff's favor, dismissal based on governmental immunity is premature.

### 3. Ministerial vs. Discretionary Conduct Requires Development

Here, the question of whether specific conduct is ministerial or discretionary cannot be resolved on the face of the pleadings. Ministerial duties are those "to which nothing is left to discretion." Ferling, 220 Md. at 113. "The term 'discretion' denotes freedom to act according to one's judgment in the asbsence [sic.] of a hard and fast rule. When applied to public officials, 'discretion' is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience, and uncontrolled by the judgment or conscience of others." Schneider v. Hawkins, 179 Md. 21, 25 (1940).

Determining whether the County's hiring, training, supervision, and investigation practices involved discretion or mandatory duties requires factual development about:

   a.  What policies and procedures existed
   b.  What training was required vs. optional
   c.  What investigation protocols were mandatory
   d.  Whether the County followed its own mandatory procedures
   e.  What background check requirements existed
   f.  What supervisory requirements were in place

These are factual questions inappropriate for resolution on a motion to dismiss.

### 4. Violations of Written Policies May Be Ministerial

Most significantly, and as noted prior, Plaintiff alleges violations of the Baltimore County Police Department's Field Manual. If the County had written policies requiring certain procedures for field interviews, de-escalation, use of force, complaint investigations, or officer discipline, and if the County failed to follow those mandatory policies, that failure would be ministerial, not discretionary.

For example, if County policy required supervisors to investigate all use of force complaints, and Sergeant German dismissed Plaintiff's complaint without investigation in violation of that policy, the failure would be ministerial. Similarly, if County policy required certain training hours

24

on field interviews or de-escalation, and the County failed to provide that training, the failure would be ministerial.

Discovery will reveal the extent of the County's written policies and whether the alleged failures violated mandatory procedures. Until that discovery occurs, governmental immunity does not warrant dismissal.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Baltimore County's Motion to Dismiss in its entirety. Plaintiff has adequately pleaded all claims against the County under the applicable pleading standards. The County's motion improperly attempts to impose summary judgment requirements at the motion to dismiss stage and ignores the well-pleaded factual allegations that must be accepted as true.

Alternatively, if the Court finds any technical deficiencies in the pleadings, Plaintiff respectfully requests leave to file a Third Amended Complaint to address those deficiencies while preserving the substantive claims.

Respectfully Submitted this 18th day of February, 2026.

Latoya Francis-Williams, Esq., ID 29957
Law Office of Latoya A. Francis-Williams
P.O. Box 451
Randallstown, Maryland 21133
410-356-4691 (office); 443-548-4588 (fax)
info@lfwlaw.org
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th  day of February, 2026, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_ Latoya Francis-Williams, Esq., ID 29957
Law Office of Latoya A. Francis-Williams
P.O. Box 451
Randallstown, Maryland 21133

410-356-4691 (office); 443-548-4588 (fax)
info@lfwlaw.org
*Attorney for Plaintiff*