IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*

ABYBATOU MBOW,

     Plaintiff,

v.

OFFICER MICHAEL MACKERT ET AL.,

     Defendants.

Civil No. 24-3674-BAH

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Abybatou Mbow ("Plaintiff") brought suit against multiple individual police officers[1] (the "County Officers") and Baltimore County, Maryland ("Baltimore County"), alleging numerous claims in connection with an alleged stop and detention of Plaintiff in May of 2024. *See* ECF 11 (amended complaint).[2] Pending before the Court is Baltimore County's motion to dismiss (the "Motion"). ECF 32. Plaintiff filed a response, ECF 34, and Baltimore County filed a reply, ECF 38. All filings include memoranda of law.[3] Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, the Motion is **GRANTED in part and DENIED in part.**

---

[1] Plaintiff's suit was filed against Officer Michael Mackert ("Mackert"), Officer Vincent G. Skinner ("Skinner"), Officer Thomas Broznowicz ("Broznowicz"), Corporal David A. Lehnert ("Lehnert"). ECF 11, at 1. Broznowicz and Lehnert have been dismissed from the action. *See* ECF 28; ECF 29.

[2] The original complaint is docketed at ECF 1.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND

The Court summarized the relevant facts in its previous memorandum opinion, *see* ECF 28, at 2–5, and recounts them here for convenience.  Plaintiff alleges in her amended complaint that on May 6, 2024, she was unlawfully stopped by Skinner and Mackert, ECF 11, at 5 ¶ 11, while the two officers were assisting Broznowicz "with a missing person investigation" regarding a missing juvenile, *id.* at 4 ¶ 8.  The "only descript[ion]" Skinner and Mackert had of the missing juvenile was that she was "Black," "female," and wearing a "black top." *Id.* at 5 ¶ 10.  Following up on a tip, Mackert "responded to 7604 Old Harford Rd" to investigate a juvenile who "was possibly walking on Hillcrest Avenue." *Id.* ¶ 9.  Skinner then "advised he had located a person matching the general description of the missing juvenile" and stopped Plaintiff. *Id.* ¶ 10.  Plaintiff alleges the stop occurred "solely because she is a black woman." *Id.* ¶ 11.  Plaintiff "repeatedly informed" Skinner and Mackert "that she was not the missing juvenile and confirmed the name they were looking for was not her name." *Id.* ¶ 12.  Plaintiff "further explained that she did not have identification with her" because "she had just stepped out to go to the store." *Id.*  She also alleges that she "complained" to the officers that their "actions were racist." *Id.*

Despite Plaintiff's "clear explanation and lack of any suspicious behavior," she alleges that Mackert and Skinner "continued to follow and harass her[,] frightening [her] and making her fear for her safety." *Id.* ¶ 13.  For example, when Plaintiff "tried to leave the officers' presence," Mackert and Skinner "jumped into their respective police vehicles and cornered [Plaintiff] in an alley," and "then used force to physically restrain her" and "tak[e] photographs of her without her consent." *Id.* ¶ 14.  She alleges that she was then "forced to the ground as she cried out for help" and "handcuffed by both Skinner and Mackert, despite her protests." *Id.* ¶ 15.  Mackert "berated Plaintiff, telling her that the situation was her own fault," allegedly stating, "you did this to yourself." *Id.* at 6 ¶ 17.  Plaintiff alleges that the episode caused her to "sustain[] physical injuries,

2

including to her knees, from being forced to the ground" and alleges that she also suffered "severe emotional trauma[.]" *Id.* ¶ 18. Mackert and Skinner "ultimately confirmed [Plaintiff] was not the missing person and released her from custody after some time." *Id.* ¶ 16.

Later that same day, Plaintiff "went to the Parkville police precinct and reported the incident." *Id.* ¶ 19. She claims that "Sergeant German . . . dismissed her complaints, advising her that the incident was her own fault for failing to provide identification[.]" *Id.* Plaintiff further alleges that the County Officers "coordinated their statements" about the stop, "with the goal of deterring and discouraging [Plaintiff] from filing a formal complaint." *Id.* ¶ 20. Also, Plaintiff alleges that "as retaliation for [Plaintiff] reporting this incident and in furtherance of their cover up," "Mackert swore out criminal charges against [Plaintiff] for two counts of assault . . . and obstructing and hindering at common law." *Id.* at 7 ¶ 24.

On September 3, 2024, Plaintiff appeared for a jury trial on her state criminal charges. *Id.* at 8 ¶ 28. She alleges that after "Skinner entered the courtroom and sat immediately in front of [Plaintiff]," Plaintiff began to "shake with fear and [be]come overwhelmed with anxiety." *Id.* ¶¶ 28–29. Plaintiff's criminal charges were ultimately dismissed. *Id.* ¶ 30.

Plaintiff alleges she has suffered "physical injury, humiliation, damage to her reputation[,] inconvenience, anxiety and severe emotional distress" and has been "forced to seek medical and mental health attention as a result of this incident, incurring substantial medical expenses and time lost from work, resulting in lost wages." *Id.* at 7–8, ¶¶ 25–26. She also alleges she has been harmed "reputation wise." *Id.* at 8 ¶ 31. Further, Plaintiff claims she was "forced to retain counsel and prepare for a criminal trial, which caused substantial financial hardship," *id.* ¶ 27, including "attorneys' fees and related expert fees," *id.* ¶ 32. Plaintiff brought thirteen claims related to this incident.

3

In March of 2025, default was entered against Baltimore County. ECF 15. Baltimore County filed a motion to vacate the entry of default, ECF 22, which was granted, ECF 28; ECF 29. The County Officers then filed a motion to dismiss. ECF 25. The Court dismissed all claims against Broznowicz and Lehnert and several claims against Skinner and Mackert. *See* ECF 28; ECF 29. Baltimore County has now filed a motion to dismiss. ECF 32. That Motion is now ripe for resolution.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

4

III. **ANALYSIS**[4]

Baltimore County moves to dismiss the following claims against it: Count VIII (42 U.S.C. § 1983 claim for violation of the Fourth Amendment); Count IX (racial discrimination); Count X (*Monell* claim for failure to train, supervise and discipline); Count XI (negligent hiring, retention, and supervision under Maryland law); Count XII (42 U.S.C. § 1983 claim for failure to investigate police misconduct); and Count XIII (negligent failure to investigate police misconduct under Maryland law).[5] ECF 31-1, at 1.

A. **Municipal Liability Claims**

Plaintiff seeks to hold Baltimore County liable under a theory of municipal liability for several claims, including violation of the Fourth Amendment (Count VIII), race discrimination in

---

[4] The Court previously chronicled several inaccurate or non-existent case citations in Plaintiff's briefing. ECF 28, at 27–29. Plaintiff's counsel purported to "withdraw" those citations. *See* ECF 33, at 2–3. However, the Court observes that in Plaintiff's response to Baltimore County's motion to dismiss, Plaintiff's counsel *again* cites to a non-existent case that she previously acknowledged as fake and subsequently withdrew. ECF 34-1, at 7 (citing to non-existent case "*Eichholz v. Camp*, 36 F.4th 908, 917 (4th Cir. 2022)" for the proposition that "Courts must accept factual allegations as true and draw reasonable inferences in Plaintiff's favor"). Baltimore County points out the repeated reference to the same fake citation but does not ask the Court to take any action. ECF 38, at 4 n.2. Given that this fabricated case does not affect the Court's analysis and noting that no action was requested by the County, the Court will not address this issue further at this time. However, suffice to say the Court has had enough of Plaintiff's fake citations and does not expect to see them again.

[5] Baltimore County does not move to dismiss Count VI, which alleges Baltimore County violated Articles 24 and 26 of the Maryland Declaration of Rights. *See* ECF 11, at 13. Baltimore County also does not move to dismiss Count VII, intentional infliction of emotional distress ("IIED"), but it is not entirely clear whether Plaintiff intended to bring the IIED claim against the County. *Compare* ECF 11, at 15 (naming Mackert, Skinner, Broznowicz, Lehnert, and Baltimore County as defendants), *with id.* at 16 (making allegations and claiming damages against Mackert, Skinner, Broznowicz, and Lehnert only). Nevertheless, the Court dismissed Plaintiff's IIED claim against the County Officers because Plaintiff failed to allege any "extreme or outrageous conduct necessary to sustain an IIED claim." ECF 28, at 18. The same reasoning applies to the extent that claim was brought against the County and so Count VII will be dismissed in its entirety.

violation of 42 U.S.C. § 1981 and Maryland law (Count IX), failure to train, supervise, and discipline (Count X), and failure to investigate police misconduct (Count XII). ECF 11, at 17–26.

### 1.    Duplicative Claims

Count VIII is pled against the County Officers and Baltimore County, while Count X is brought against Baltimore County only. ECF 11, at 17, 22. As to Baltimore County, these claims are duplicative. Claims are duplicative where they "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 417 (D. Md. 2022) (quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)). "As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the same suit." *Id.* (quoting the same). Here, both claims allege a theory of municipal liability based on Baltimore County Police Department's pattern or practice of excessive force and unlawful detention and Baltimore County's failure to "adequately train, supervise, or discipline its police officers." ECF 11, at 18, 22–23. The only apparent difference between these claims is that under Count X, Plaintiff alleges Baltimore County violated not only the Fourth Amendment but also the Fourteenth Amendment. *Id.* at 24. As such, Count VIII as brought against Baltimore County does not appear to present any legal or factual theories that are not already incorporated under Count X. *Id.* at 18. Because these claims are duplicative, Count VIII will move forward against Mackert and Skinner only as a Fourth Amendment claim, and the Court will construe Count X as the only *Monell* claim for excessive force and unlawful seizure brought against Baltimore County. *Id.* at 22.

### 2.    Remaining *Monell* Claims

Under *Monell*, "a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens*, 767 F.3d at 402 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "There are

three necessary elements for *Monell* liability." *Lilly v. Balt. City Police Dep't*, Civ. No. BAH-22-2752, 2025 WL 1709856, at \*19 (D. Md. June 17, 2025). "First, the plaintiff must show a constitutional harm that stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom." *Id.* (internal quotation marks omitted) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)); *see also Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). "As interpreted by the Fourth Circuit, a 'policy or custom' can exist in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lilly*, 2025 WL 1709856, at \*19 (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). "Further, the plaintiff must put forth facts showing that the policy's creation is fairly attributable to the municipality." *Id.* (quoting *Spell*, 824 F.2d at 1389). "Finally, the plaintiff must show an affirmative causal link between the 'policy or custom,' and the particular injury suffered by the plaintiff." *Id.* (quoting the same). "[A] single act by a municipality may give rise to civil liability if it is shown that the officials of the municipality responsible for establishing the challenged policy made a calculated choice to follow the course of action deemed unconstitutional." *Id.* (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 726 (4th Cir. 1990)). "To avoid imposing *respondeat superior* liability on municipalities, a plaintiff must do more than identify something that the municipality 'could have done' to prevent the alleged injury." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)). Here, Plaintiff's *Monell* claims are generally grounded on theories of "[d]eficient training as culpable municipal 'policy'" and

7

"[u]nconstitutional police practices as municipal 'custom or usage' by condonation." *Spell*, 824 F.2d at 1389–90; *see also e.g.*, ECF 11, at 22–23.

Where a deficient training policy causes "specific constitutional violations by deficiently trained police officers, the municipality is liable under 42 U.S.C. § 1983." *Spell*, 824 F.2d at 1389. "Training policy deficiencies can include (1) 'express authorizations of unconstitutional conduct,' (2) 'tacit authorizations' of such unconstitutional conduct, and (3) failures to adequately 'prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.'" *Cottman et al. v. Balt. Police Dep't et al.*, Civ. No. SAG-21-00837, 2022 WL 137735, at *8 (D. Md. Jan. 13, 2022) (quoting *Spell*, 824 F.2d at 1390). "[T]he plaintiff must point out 'a specific deficiency' in training, 'rather than general laxness or ineffectiveness in training.'" *Id.* (quoting the same). "Second, a plaintiff must establish that the municipality's failure to train showed a 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (alteration in original). "Finally, the plaintiff must show that 'the officer's conduct resulted from said training,' or lack thereof." *Id.* (quoting *McDowell v. Grimes*, Civ. No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018)). "It is, however, important to note that oftentimes 'a plaintiff lacks specific details regarding the municipal actor's internal polices and training procedures before discovery. Although boilerplate allegations will not suffice, at the motion to dismiss stage, courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers.'" *Id.* (quoting *Johnson v. Baltimore Police Dep't*, Civ. No. ELH-19-00698, 2020 WL 1169739, at *34 (D. Md. Mar. 10, 2020)).

Where unconstitutional practices by police officers become "sufficiently widespread, . . . they may assume the quality of 'custom or usage' which, per § 1983, has the force of state 'law'

for purposes of invoking the remedies provided by § 1983." *Spell*, 824 F.2d at 1390. "Under the condonation theory of liability, a city violates § 1983 if municipal policymakers fail to put a stop to or correct a widespread pattern of unconstitutional conduct." *Est. of Bryant v. Baltimore Police Dep't*, Civ. No. ELH-19-384, 2020 WL 673571, at *39 (D. Md. Feb. 10, 2020) (internal quotation marks omitted) (quoting *Owens*, 767 F.3d at 402). "A condonation claim must make plausible that municipal officials engaged in 'a persistent and widespread practice', the 'duration and frequency of which indicate . . . actual or constructive knowledge of the conduct[,]' and that their failure to correct the misconduct was 'due to their deliberate indifference.'" *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 299 (D. Md. 2022) (quoting *Est. of Bryant*, 2020 WL 673571, at *39) (alteration in original); *see also Spell*, 824 F.2d at 1390.

Under Count X, Plaintiff alleges that Baltimore County is liable under the Fourth and Fourteenth Amendments based on Baltimore County Police Department's "widespread pattern and practice of condoning and permitting the use of excessive force, unlawful detention, racial profiling, and the harassment of Black individuals." ECF 11, at 22. Plaintiff also alleges that Baltimore County "has failed to adequately train, supervise, or discipline its police officers in the proper handling of field interviews, interactions with victims and witnesses, and the use of force, particularly when dealing with Black individuals." *Id.* at 22–23. These training deficiencies, Plaintiff alleges, have caused a policy or practice of "use of excessive force against Black individuals who do not present a threat to officer safety," wrongful detention, and unlawful arrests. *Id.* at 23. Baltimore County concedes that Plaintiff has alleged facts sufficient to state a plausible *Monell* claim based on excessive force. ECF 32-1, at 8 (stating that "Plaintiff fails to adequately plead a *Monell* claim that is not based on excessive force"). Accordingly, Count X will proceed

9

on that theory. Baltimore County argues, however, that Plaintiff has not supported a *Monell* claim based on any other constitutional violations. *Id.*

At this stage, the Court finds that Plaintiff has also sufficiently alleged a *Monell* claim for unlawful seizure by "pair[ing] general averments of a policy or custom with particular examples." *Ulloa v. Prince George's Cnty., Maryland*, Civ. No. DKC 15-0257, 2015 WL 7878956, at *6 (D. Md. Dec. 4, 2015). The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (*citing Dunaway v. New York*, 442 U.S. 200, 213 (1979)). "[T]he Fourth Circuit has explained that § 1983 incorporates common law torts, such as false arrest and false imprisonment, so as to create a 'special species of tort liability, founded on rights originating in the Constitution.'" *Osborne v. Giordades*, Civ. No. RDB-14-182, 2015 WL 251956, at *5 (D. Md. Jan. 20, 2015) (internal quotation marks omitted) (quoting *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000)). Thus, "false arrest and false imprisonment claims . . . are essentially claims alleging a seizure of the person in violation of the Fourth Amendment[.]" *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001).

As to condonation, Plaintiff alleges a pattern or practice of "harass[ing], *detain[ing]*, and us[ing] excessive force against individuals, particularly people of color, without legal justification." ECF 11, at 18–19 (emphasis added). In support of her failure to train theory, Plaintiff points to specific deficiencies in training including "interview techniques, de-escalation strategies, and constitutional parameters," including under "Baltimore County's Field Manual." *Id.* at 19. Plaintiff also points to, and provides factual details of, several cases (including her own) that allegedly involved both excessive force and unlawful seizure. ECF 11, at 6–7 ¶ 23 (alleging

10

that Alonzo Cox was "charged with resisting arrest," that Howard Lewis was wrongfully arrested, and Elijah Lockley was unlawfully arrested). Baltimore County fails to explain why these cases would support a *Monell* claim based on the theory of excessive force, but not unlawful seizure. *See* ECF 32-1, at 4–5 (citing ECF 11, at 14 ¶ 65); *cf. Ulloa*, 2015 WL 7878956, at *4 (noting that a plaintiff's "string citation to ten lawsuits . . . without further explanation" or factual allegations failed to support a *Monell* claim). Seeing no reason for any distinction, the Court concludes at this early stage of litigation that these allegations are sufficient to support a plausible inference of municipal liability for both theories of violation of the Fourth Amendment Plaintiff pursues— specifically, excessive force and unlawful seizure. *Cf. Owens*, 767 F.3d at 403 (finding a *Monell* claim plausibly alleged where the plaintiff noted "the existence of 'reported and unreported cases' and numerous 'successful motions'—which, if true, would buttress his legal conclusion"). Whether Plaintiff can ultimately prevail on a *Monell* claim under these theories remains to be seen. *See id.* ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier. . . . The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high."). However, at this stage, Plaintiff adequately pleads facts supporting a plausible inference of municipal liability for excessive force and unlawful seizure in violation of the Fourth Amendment. Count X may proceed on these theories.

Plaintiff may not, however, ground a *Monell* claim on the violation of her Fourteenth Amendment due process rights. Because municipalities may not be held vicariously liable under § 1983, "in most cases, a plaintiff's § 1983 claims against a municipality 'hinge on his ability to show that [individual defendants] violated his constitutional rights.'" *Grim v. Baltimore Police Dep't*, Civ. No. ELH-18-3864, 2020 WL 1063091, at *4 (D. Md. Mar. 5, 2020) (quoting *Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 540 (D. Md. 1995)); *see also Marryshow v. Town of*

*Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) ("Under Section 1983, to hold the [supervisor and municipality] Defendants liable, Plaintiff must first establish that at least one [individual] Defendant violated his constitutional rights."). Thus, if a plaintiff "fails in h[er] efforts to show that an active defendant violated his constitutional rights, h[er] claims against the County likewise fail." *Dawson*, 896 F. Supp. at 540. Here, Plaintiff does not allege that any individual County Officer violated her *due process* rights. Plaintiff's complaint instead focuses on the alleged violation of her constitutional right against unlawful search and seizure. *See e.g.*, ECF 11, at 6 ¶ 21 (alleging officers' history of "depriving victims and witnesses of their constitutional rights to be free from excessive force and unreasonable searches and seizures"). Such claims are distinct. *See Boeh v. Dail*, Civ. No. EA-23-1020, 2025 WL 2637483, at *7 (D. Md. Sept. 12, 2025) (explaining that "claims regarding an arrest without probable cause and the use of excessive force during the course of an arrest arise under the Fourth Amendment and not the Fourteenth Amendment's more general substantive due process right" (citing *Albright v. Oliver*, 510 U.S. 266, 274–75 (1994)). Given that Plaintiff does not allege a violation of her Fourteenth Amendment due process rights by any of the individual County Officers, any *Monell* claim based on this theory may not lie. *Cf. Grim*, 2020 WL 1063091, at *4 ("It is axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee." (citation modified)). Accordingly, Count X cannot proceed based on a Fourteenth Amendment due process violation. For the same reason, Plaintiff's claim that Baltimore County failed to investigate police misconduct in violation of the Fourteenth Amendment (Count XII), *see* ECF 11, at 27, is likewise dismissed.

The same rationale also applies to Plaintiff's allegation of municipal liability against Baltimore County for race discrimination under Count IX. Plaintiff initially brought this claim

under 42 U.S.C. § 1981 and "Maryland law" against Baltimore County and individual County Officers Mackert, Skinner, and Broznowicz. ECF 11, at 19. The Court dismissed the claim against the County Officers because Plaintiff abandoned her § 1981 claim and otherwise "failed to properly plead a standalone discrimination claim under Maryland law." ECF 28, at 21. Given that Plaintiff has failed to allege an underlying claim of race discrimination against any individual officers, a municipal liability claim against Baltimore County based on the same theory cannot proceed. *See Anderson v. Caldwell Cty. Sheriff's Off.*, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee."). Accordingly, Count IX is dismissed.

### B.    Negligence Claims

Plaintiff also advances two negligence theories against Baltimore County under Maryland law: negligent hiring, retention, and supervision (Count XI) and negligent failure to investigate police misconduct (Count XIII). ECF 11, at 24, 27. Baltimore County asserts that it is immune from suit for negligence claims. ECF 32-1, at 10.

"Maryland law is well settled that a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary." *Clark v. Prince George's Cnty.*, 65 A.3d 785, 790 (Md. App. 2013) (citation omitted). "The operation by a county of its police department is quintessentially governmental." *Id.* at 791. Accordingly, a county cannot "be sued in its own capacity for common law tort liability, including for the torts of negligent hiring [or] retention." *Id.* Both of Plaintiff's claims for negligent hiring and negligent failure to investigate are grounded in theories of ordinary negligence. *See, e.g.*, ECF 11, at 28 ("Baltimore County owes a duty of care to its citizens to properly investigate allegations of police misconduct[.]"). As such, Counts XI and XIII must be dismissed as Baltimore County is immune from suit. *Cf. Robinson v. Baltimore Cnty., Maryland,*

13

Civ. No. LKG-21-02997, 2022 WL 3577267, at *5 (D. Md. Aug. 19, 2022) (dismissing a negligence claim against Baltimore County because it "involve[d] the operation of the BCPD").

Plaintiff argues that *Evans v. Morsell*, 395 A.2d 480 (Md. 1978), demands a different result because "Maryland recognizes negligent hiring/retention principles where an employer knew or should have known of an employee's dangerous propensities and the negligence proximately caused harm." ECF 34-1, at 22. However, as Baltimore County correctly points out, *Evans* is inapposite because it involves a private employer, not a county or municipality. ECF 38, at 9. Counts XI and XIII are dismissed.

## IV.   **CONCLUSION**

For the foregoing reasons, Baltimore County's motion to dismiss is GRANTED in part and DENIED in part. The motion is granted as to Count IX (race discrimination); Count XI (negligent hiring, retention, and supervision); Count XII (failure to investigate police misconduct); and Count XIII (negligent failure to investigate police misconduct), and these claims are DISMISSED. Count VII (IIED) is also DISMISSED. Because the claims are duplicative, Court construes Count VIII (42 U.S.C. § 1983 claim) as brought against Mackert and Skinner only, and Count X (*Monell* claim) as brought against Baltimore County. Count X survives on excessive force and unlawful seizure theories under the Fourth Amendment. Because Baltimore County's Motion does not address Count VI, which alleges that Baltimore County violated Articles 24 and 26 of the Maryland Declaration of Rights, that count also remains.

A separate implementing order will issue.

Dated: <u>July 17, 2026</u>                                          <u>          /s/          </u>
                                                                    Brendan A. Hurson
                                                                    United States District Judge

14